325 So.2d 123 (1976)
ABC INTERSTATE THEATRES, INC., Defendant-Appellant,
v.
STATE of Mississippi, Complainant-Appellee.
No. 48583.
Supreme Court of Mississippi.
January 13, 1976.
*124 Thomas, Price, Alston, Jones & Davis, Jackson, Phillip A. Wittmann, Anthony M. DiLeo, New Orleans, La., for defendant-appellant.
A.F. Summer, Atty. Gen., by John C. Underwood, Jr., Sp. Asst. Atty. Gen., Jackson, for complainant-appellee.
Before PATTERSON, INZER and WALKER, JJ.
PATTERSON, Justice:
This appeal arises from the Circuit Court of Forrest County as the result of the seizure by the state of the film "The Exorcist," and the subsequent conviction of ABC Interstate Theatres, Inc., on the charge that the film was "obscene, indecent, or immoral" as these terms are used in Mississippi Code Annotated section 97-29-33 (1972). The appellant assigns as error, among other assignments, that the statute under which it was convicted is unconstitutionally overbroad.
In April 1974 several police officers and a justice of the peace accompanied the district attorney to the Saenger Theatre, owned by the appellant, in the city of Hattiesburg, Mississippi, to observe the motion picture, "The Exorcist," which was being shown to the public. Thereafter, affidavits were filed, warrants issued, the film seized and the theatre manager and projectionist were arrested. The charges against the manager and the projectionist were subsequently dismissed, but the corporate appellant was tried for publicly exhibiting an obscene, indecent and immoral motion picture in violation of Section 97-29-33, supra.
The appellant argues numerous assignments of error for reversal, but we limit this opinion to the constitutionality of Mississippi Code Annotated section 97-29-33 (1972) which provides:
It shall be unlawful for any person, firm or corporation, owning or operating any moving picture show or moving picture establishment, in this state, to show, or exhibit to public view on a screen or otherwise, any obscene, indecent, or immoral *125 picture, drawing or print, provided such picture, drawing or print is not being exhibited under the auspices of health authorities for educational purposes. Any person, firm or corporation owning or operating any moving picture show or moving picture establishment in this state, violating this section shall be guilty of a misdemeanor and on conviction shall be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars, or by imprisonment for not more than sixty days or both. (Emphasis added.)
The appellant argues that the statute is unconstitutionally overbroad, lacks specificity, and does not comply with the standards prescribed by the United States Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), regarding the First Amendment to the United States Constitution's prohibition of the enactment of laws abridging freedom of speech.
In the beginning we reiterate that it is axiomatic that the United States Supreme Court is the final arbiter of the constitution and that its constructions are the final authority upon the meaning of the terms of that great document. Moreover, its decisions, which apply to the states through the Fourteenth Amendment, permit little leeway by this or other state judiciaries to recede from its pronouncements of the meaning of our federal constitution. It necessarily follows that if either the statutory or case law of the state conflicts with the construction of the federal constitution as placed upon it by the United States Supreme Court, the state law must yield. The issues before us must be decided from this context.
We are of the opinion that Mississippi Code Annotated section 97-29-33 (1972) is overbroad since it prohibits freedom of speech in areas beyond the permissible limits of Miller, supra. There the United States Supreme Court said:
... State statutes designed to regulate obscene material must be carefully limited... . As a result, we now confine the permissible scope of such regulations to works which [would] depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. [The stated] offense must also be limited to works which, taken as a whole, appeal to prurient interest in sex, which portray sexual conduct in a patently offensive way, and which taken as a whole, do not have serious literary, artistic, political, or scientific value. 413 U.S. at 23-24, 93 S.Ct. at 2614-2615, 37 L.Ed.2d at 430-431.
The standard for the trier of fact was stated:
The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest ... (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value... . 413 U.S. at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 431.
The area of regulation remaining to the states was expressed through the following examples:
We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, supra:
(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

*126 (b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.
Sex and nudity may not be exploited without limit by films or pictures exhibited or sold in places of public accommodation any more than live sex and nudity can be exhibited or sold without limit in such public places. At a minimum, prurient, patently offensive depiction or description of sexual conduct must have serious literary, artistic, political, or scientific value to merit First Amendment protection....
413 U.S. at 25-26, 93 S.Ct. at 2615-2616, 37 L.Ed.2d at 431-432.
We think it self-evident that using a statutory definition of "obscene, indecent or immoral" in viewing moving pictures treads upon the freedom of speech requirements of Miller and as such is an unconstitutional trespass upon the First Amendment to the United States Constitution.[1] Of interest, see 45 Miss.L.J. 435  Miller v. California: A Mandate for New Obscenity Legislation (1974).
The state does not seriously argue the constitutionality of Section 97-29-33 by its literal terms, but urges this Court to "authoritatively construe" it to constitutional proportions by reading into it the specificity and limitations of Miller. We are not persuaded for several reasons. The adoption of authoritative construction could only be prospective as to this appellant, for surely a retrospective application of Miller would impose upon this appellant an ex post facto rule of law, for how can it be said that the defendant's actions in showing the movie were criminal when the alleged crime was committed a year and a half before the statute was revitalized by authoritative construction.[2]Ballew v. State, 292 Ala. 460, 296 So.2d 206 (1974), the concurring opinion of Chief Justice Heflin; Papp v. State, 281 So.2d 600 (Fla.App. 1973); and Stroud v. State, 300 N.E.2d 100 (Ind. 1973).
Moreover, this Court has never undertaken the suggested approach of the state, though it must be conceded that such authoritative construction is permitted by Miller. In Boydstun v. State, 249 So.2d 411 (Miss. 1971), we held this Court would not define the offense of criminal libel or make common law even though the elements of that common law offense were uncertain due to the passage of time and varied constructions by the United States Supreme Court during the interval. We determined that the enactment of criminal offenses was best left to the legislature. See also Reserve Life Ins. Co. v. Coke, 254 Miss. 936, 183 So.2d 490 (1966), and Monaghan, State Tax Collector v. Reliance Mfg. Co., 236 Miss. 462, 111 So.2d 225 (1959).
We think it is clearly demonstrated by these decisions that our constitution intended the legislative function to be left to that body, and particularly the enactment of criminal sanctions for transgressions thought to be offensive to the citizenry of this state. Without doubt, the legislature is better suited for that purpose than is this Court by the use of judical engraftment to meet constitutional requirements. We observe also that the legislature might want to give consideration to Article 3, Section 13, of the Mississippi Constitution *127 (1890) relating to the freedom of speech in this state. It is there provided that "the freedom of speech and of the press shall be held sacred; ..." when considering amendatory legislation. We are of the opinion, without deciding, that Article 3, Section 13, supra, by modern-day standards, appears to be more protective of the individual's right to freedom of speech than does the First Amendment since our constitution makes it worthy of religious veneration. We therefore reject the revitalization of Section 97-29-33 by authoritative construction.
We are aware that attempts to regulate obscene matters have resulted in controversy unequaled in other areas of law and we are hesitant to enter this thicket where each of us by his background and education can clearly perceive and distinguish between obscenity and nonobscenity, but which due to human frailties, we are unable to reduce to written definition capable of clear understanding by others because their eyes are beclouded by other environments and education. At least Miller has reduced the formulation of obscenity statutes from a national standard of "utterly without social value" to the standard of "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value," and has placed the composition thereof to the discretion of the community, a step toward moderation heretofore non-existent.
Mississippi Code Annotated section 97-29-33 (1972), was enacted in 1920, has not been changed, and presently contravenes the Miller definition of the First Amendment and as such it is unconstitutional.
This case was considered before the conference of judges en banc.
Reversed and rendered.
RODGERS, P.J., and INZER, SMITH and BROOM, JJ., concur.
GILLESPIE, C.J., and SUGG, ROBERTSON and WALKER, JJ., dissent.
SMITH, Justice (specially concurring):
I concur in the conclusion reached by the majority in this case.
Bound, as we are, by the pronouncements of the United States Supreme Court, the Mississippi obscenity statute, in its present form, fails to meet "standards" set forth by that Court in Miller v. California, cited in the opinion.
In its opinion in Miller, the United States Supreme Court seems to invite state courts to amend state obscenity statutes by judicial legislation so that such statutes will comply with the requirements imposed in Miller. I conceive the constitutional tripartite separation of powers to be a fundamental and salutary concept of our form of government. The judiciary should not usurp or encroach upon powers constitutionally vested exclusively in the legislative branch. In my own personal view of what is obscene and what is not, and I am certain in the personal view of each of the other justices comprising the majority in this case, the matter discussed in the dissents unquestionably would appear to be obscene. But unlike a gun (used as an example in a dissent) obscenity, in one respect, is like beauty, and lies in the eye of the beholder. This appears to have been one reason for the difficulty experienced in drafting a criminal statute which meets standards set up by the United States Supreme Court.
I am convinced that the Mississippi Legislature now in session, will, (and in my humble opinion should) amend the present obscenity statute in order to comply with the latest utterances of the United States Supreme Court on the subject so that its praiseworthy object may be accomplished.
The result of judicial legislation during the past several decades fails to convince *128 that such radical departure by courts from their traditional and constitutional role and the encroachment upon the legislative prerogative by the judiciary have been other than unwise.
BROOM, J., joins in this opinion.
BROOM, Justice (concurring):
I am in complete accord with the decision reached by the majority in this case.
The United States Supreme Court has, as a practical matter, invited this Court to authoritatively construe a criminal statute enacted by the legislature. Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, reh. den. 414 U.S. 881, 94 S.Ct. 26, 38 L.Ed.2d 128 (1973). To authoritatively construe this statute as suggested by the state, in my judgment, would amount to an adventure into judicial legislation which this Court has heretofore consistently rejected as an improper course to follow. The United States Supreme Court (as previously constituted) has in several instances legislated by judicial fiat, but in so doing that great and powerful body has brought turmoil and confusion upon the jurisprudence of the nation. Even if we were to authoritatively construe the words "obscene, indecent, or immoral" in the present case so as to make the statute constitutional, we could not do so retroactively because in effect such a decision would create an ex post facto law. Thus it is clear that no action of this Court can now prevent showing of the film under consideration.
Recently this Court, as to procedural matters, has asserted its rule making powers. Newell v. State, 308 So.2d 71 (Miss. 1975). In so doing, we based our decision upon the firm constitutional ground that no department of government, whether legislative, judicial, or executive, should encroach upon the powers of another department. As the record before us shows, there is a wide divergence of opinion among intelligent people as to what is or is not "obscene, indecent or immoral." My considered judgment is that the legislature, now in session, is the appropriate body to set standards of conduct which are to constitute criminal offenses. Such legislative action could reasonably be taken during the current session and protect the public from any lengthy void in this regard. This Court has rightly decided that it will not engage itself in the business of enacting criminal sanctions by judicial fiat.
GILLESPIE, Chief Justice (dissenting):
With deference, I dissent.
The gist of the holding of the majority is that Mississippi Code Annotated section 97-29-33 (1972) is overbroad, or, to state it differently, that the statute is not sufficiently definite to meet constitutional standards. The statute condemns the showing of films that are "obscene, indecent or immoral."
The Supreme Court of the United States has wrestled with obscenity statutes in a vain attempt to find a satisfactory definition of the term. Prior to Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the Court held that to prove obscenity it must be affirmatively established that the material is "utterly without redeeming social value." It was noted in Miller that the late Mr. Justice Harlan questioned whether the "utterly without redeeming social value" test had any meaning at all, and the Court, in Miller, further stated:
Apart from the initial formulation in the Roth case, no majority of the Court has at any given time been able to agree on a standard to determine what constitutes obscene, pornographic material subject to regulation under the States' police power. See, e.g., Redrup v. New York, 386 U.S. [767] at 770-771, 87 S.Ct. [1414], at 1415-1416, 18 L.Ed.2d 515. We have seen "a variety of views among the *129 members of the Court unmatched in any other course of constitutional adjudication." 413 U.S. at 22, 93 S.Ct. at 2614, 37 L.Ed.2d at 429.
In Miller, the Court made an effort to bring some order to the chaotic condition of the law as it applied to obscenity statutes. In Pierce v. Alabama, 292 Ala. 473, 296 So.2d 218 (1974), cert. denied, 419 U.S. 1130, 95 S.Ct. 816, 42 L.Ed.2d 830 (1974), the Alabama Court correctly stated that the United States Supreme Court in Miller "invites judicial construction as a method of supplying the required specificity if such is absent from the statute." The Alabama statute is no more specific than the Mississippi statute, even when the amendment attempting to define the word "obscene" is considered. The principal holdings in Pierce are stated at the beginning of the opinion as follows:
1. The tests set forth in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) are engrafted by judicial construction to the 1961 Alabama obscenity statute.
2. With the Miller engraftments the 1961 Alabama obscenity statute is constitutional as applied in the context of the instant case.
3. Contemporary community standards referred to in Miller are statewide standards in Alabama. 296 So.2d at 219.
In Miller, supra, the Court defined the permissible scope of obscenity regulation in the following language:
State statutes designed to regulate obscene materials must be carefully limited. See Interstate Circuit, Inc. v. Dallas, supra, 390 U.S. [676], at 682-685, 88 S.Ct. [1298], at 1302-1305, 20 L.Ed.2d 225. As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.
The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, Kois v. Wisconsin, supra, 408 U.S. [229], at 230, 92 S.Ct. [2245], at 2246, 33 L.Ed.2d 312, quoting Roth v. United States, supra, 354 U.S. [476], at 489, 77 S.Ct. [1304], at 1311, 1 L.Ed.2d 1498; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the "utterly without redeeming social value" test of Memoirs v. Massachusetts, 383 U.S. [413], at 419, 86 S.Ct. [975], at 977, 16 L.Ed.2d 1; that concept has never commanded the adherence of more than three Justices at one time. See supra, [413 U.S.], [at 21], [93 S.Ct.] at 2613, 37 L.Ed.2d at 429. If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary. See Kois v. Wisconsin, supra, [408 U.S.], at 232, 92 S.Ct. at 2247, 33 L.Ed.2d 312; Memoiris v. Massachusetts, supra, 383 U.S., at 459-460, 86 S.Ct., at 998, 16 L.Ed.2d 1 (Harlan, J., dissenting); Jacobellis v. Ohio, 378 U.S. [184], at 204, 84 S.Ct. [1676], at 1686, 12 L.Ed.2d 793 (Harlan, J., dissenting); New York Times Co. v. Sullivan, 376 U.S. 254, 284-285, 84 S.Ct. 710, 11 L.Ed.2d 686, *130 728, 95 A.L.R.2d 1412 (1964); Roth v. United States, supra, 354 U.S., at 497-498, [77 S.Ct., at 1315-1316], 1 L.Ed.2d 1498 (Harlan, J., concurring and dissenting).
We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, supra:
(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.
Sex and nudity may not be exploited without limit by films or pictures exhibited or sold in places of public accommodation any more than live sex and nudity can be exhibited or sold without limit in such public places. At a minimum, prurient, patently offensive depiction or description of sexual conduct must have serious literary, artistic, political, or scientific value to merit First Amendment protection. 413 U.S. at 23-26, 93 S.Ct. at 2614-2616, 37 L.Ed. at 430-432.
In Nelson v. City of Natchez, 197 Miss. 26, 19 So.2d 747 (1944), the Court construed a municipal penal ordinance, and the question was what constituted a "public place." The Court, in holding that a restaurant was a public place, stated:
Certainly, the general rule is that penal statutes must be strictly construed. At the same time courts are required to take a reasonable and common-sense view of the evil at which a statute is directed and the protection which it is designed to afford; and when these are within the letter of the statute, the enactment is to be construed in accordance with its purpose, although its letter would admit a narrower interpretation. 197 Miss. at 31, 19 So.2d at 747.
In United States v. Hood, 343 U.S. 148, 72 S.Ct. 568, 96 L.Ed. 846 (1951), the question at issue was the vagueness of a criminal statute. In upholding the statute, the Supreme Court stated:
It is pressed upon us that criminal statutes are to be strictly construed. But this does not mean that such legislation "must be construed by some artificial and conventional rule." United States v. Union Supply Co. 215 U.S. 50, 55, 30 S.Ct. 15, 16, 54 L.Ed. 87, [88]. We should not read such laws so as to put in what is not readily found there. But equally we should not read out what as a matter of ordinary English speech is in.
The Act penalized corruption. It is no less corrupt to sell an office one may never be able to deliver than to sell one he can. Dealing in futures also discredits the processes of government. There is no indication that this statute punishes delivery of the fruit of the forbidden transaction  it forbids the sale. The sale is what is here alleged. Whether the corrupt transaction would or could ever be performed is immaterial. We find no basis for allowing a breach of warranty to be a defense to corruption.
Our construction of the statute does not offend the requirement of definiteness. The picture of the unsuspecting influence merchant, steering a careful course between violation of the statute on the one hand and obtaining money by false pretenses on the other by confining himself to the sale of non-existent but plausible offices, entrapped by the dubieties of this statute, is not one to commend itself to reason.
343 U.S. at 151, 72 S.Ct. at 570, 96 L.Ed. at 849.
In my opinion, this Court has the constitutional power to construe the statute in *131 question as required by Miller and uphold its validity. I also believe it to be the duty of the Court to do so. Then the Court could examine the evidence to determine whether the film violated the statute as construed according to the Miller standards. This would, in my opinion, be consistent with both the decisions of this Court and the Supreme Court of the United States. Indeed, as noted in Pierce v. Alabama, supra, Miller invites construction of obscenity statutes so as to conform to Miller standards.
I do not think the present case is necessarily controlled by Boydstun v. State, 249 So.2d 411 (Miss. 1971). That case involved the statute making it a crime to publish "any libel."
The Court has the duty to construe the meaning of statutes, and has done so in many cases. It has construed what is meant by "accessory" in Mississippi Code Annotated section 97-1-3 (1972); what constitutes a "design and endeavor" to commit a crime, section 97-1-7; what is a "deadly weapon," section 97-3-7; what is a "deliberate design" in a homicide statute, section 97-3-19; what constitutes "culpable negligence" in a manslaughter statute, section 97-3-47; and what constitutes "desertion" or "wilful neglect" of children, section 97-5-3.
For the reasons stated and upon the authority cited, I am of the opinion that the statute should be upheld by construing it according to Miller standards.
ROBERTSON, SUGG and WALKER, JJ., join in this dissent.
SUGG, Justice (dissenting):
In this case we do not reach the question of whether "The Exorcist" is obscene, but the majority reverses and renders on the ground that Mississippi Code Annotated section 97-29-33 (1972) is unconstitutional. I have neither read "The Exorcist" nor seen the movie, but if, as indicated in the briefs, the book and the movie depict masturbation by a young girl using a crucifix, there can be no doubt that they are obscene. However, the majority opinion declares that Mississippi Code Annotated section 97-29-33 (1972) is unconstitutional because it "contravenes the Miller definition of the First Amendment." Appellant argues that the statute is unconstitutional because it is overbroad and lacks specificity. This is simply another way of stating that it is "void for vagueness."
The United States Supreme Court addressed this question in United States v. Powell, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975) and held that 18 U.S.C. § 1715, which proscribes mailing pistols, revolvers and "other fire arms capable of being concealed on the person" is not unconstitutional under the void for vagueness doctrine. The Court stated:
But the challenged language of 18 U.S.C. § 1715 is quite different from that of the statute involved in Cohen [United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516]. It intelligibly forbids a definite course of conduct: the mailing of concealable firearms. While doubts as to the applicability of the language in marginal fact situations may be conceived, we think that the statute gave respondent adequate warning that her mailing of a sawed-off shotgun of some 22 inches in length was a criminal offense. Even as to more doubtful cases than that of respondent, we have said that "the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." Nash v. United States, 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232 (1913).
The Court of Appeals questioned whether the "person" referred to in the statute to measure capability of concealment was to be "the person mailing the firearm, the person receiving the firearm, or, perhaps, an average person, male *132 or female, wearing whatever garb might be reasonably appropriate, wherever the place and whatever the season?" [9 Cir.] 501 F.2d [1136], at 1137. But we think it fair to attribute to Congress the commonsense meaning that such a person would be an average person garbed in a manner to aid, rather than hinder, concealment of the weapons. Such straining to inject doubt as to the meaning of words where no doubt would be felt by the normal reader is not required by the "void for vagueness" doctrine, and we will not indulge in it.

The Court of Appeals also observed that "to require Congress to delimit the size of the firearms (other than pistols and revolvers) it intends to declare unmailable is certainly to impose no insurmountable burdens upon it... ." Ibid. Had Congress chosen to delimit the size of the firearms intended to be declared unmailable, it would have written a different statute, and in some respects a narrower one than it actually wrote. To the extent that it was intended to proscribe the mailing of all weapons capable of being concealed on the person, a statute so limited would have been less inclusive than the one Congress actually wrote.

But the more important disagreement we have with this observation of the Court of Appeals is that it seriously misconceives the "void for vagueness" doctrine. The fact that Congress might, without difficulty, have chosen "clearer and more precise language" equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague. United States v. Petrillo, 332 U.S. 1, 7, 67 S.Ct. 1538, 1541, 91 L.Ed. 1877 (1947). (423 U.S. at 93, 96 S.Ct. at 320) (Emphasis supplied).
The statute in question intelligibly forbids showing any obscene picture, drawing or print unless exhibited under the auspices of health authorities for educational purposes. Miller simply limits the definition of the word obscene to the standards set forth therein, and reaffirmed the principle that obscenity is not protected by the First Amendment. The word obscene has a definite meaning and we should not strain to inject doubt as to its meaning where no doubt would be felt by a normal person.
Although the legislature might have chosen clearer and more precise language, this fact does not make the statute unconstitutionally vague. We should not invoke the void for vagueness doctrine and loose upon the citizens of this state a flood of pornographic movies whose only purpose is to undermine the moral fiber of our citizens.
GILLESPIE, C.J., and ROBERTSON, J., join in this dissent.
NOTES
[1] See Kingsley Int. Pic, Corp. v. Regents of N.Y.U., 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed. 1512 (1959); Holmby Productions, Inc. v. Vaughn, 350 U.S. 870, 76 S.Ct. 117, 100 L.Ed. 770 (1955); and Anderson v. City of Hattiesburg, 131 Miss. 216, 94 So. 163 (1922). Other states with statutes similar to ours, predating Miller and not amended in accord with it, have encountered the same difficulty: Louisiana, Tennessee, Georgia, Iowa, North Dakota, Indiana and Massachusetts.
[2] The state was granted, over objection of the defendant, an instruction that permitted conviction for exhibiting "an obscene, indecent or immoral picture."