**STAR SATELLITE, INC., a Mississippi Corp., d/b/a Satellite News, Plaintiff-Appellant,**

v.

**CITY OF BILOXI, A Mississippi Municipal Corporation, Defendant-Appellee.**

No. 85–4068.

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1986.

George F. Bloss, III, Gulfport, Miss., for plaintiff-appellant.

Ronald G. Peresich, Tere R. Richardson, Biloxi, Miss., for defendant-appellee.

Before RUBIN, RANDALL and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

This case involves a challenge by appellant Star Satellite, Inc., against a zoning ordinance of the City of Biloxi, Mississippi. The ordinance restricts the location and the operation of various commercial establishments in Biloxi, including those that deal in adult books, magazines, and films. Star Satellite contends that the ordinance violates the First Amendment, the Fourteenth Amendment, and Mississippi state law.

Star Satellite sought a preliminary injunction against the enforcement of the ordinance pending the outcome of its suit. The district court found that Star Satellite had standing only to challenge the ordi-

nance's restrictions on the hours of operation and on the resale of the business. The district court denied Star Satellite's motion for a preliminary injunction as to these provisions. Star Satellite appeals the district court's denial of the injunction. 28 U.S.C. § 1292(b); Fed.R.App.P. 5.

## I. FACTS

Star Satellite operates an adult bookstore in Biloxi. It sells sexually explicit books, magazines, films, video tapes, and video recordings. Star Satellite is located within an area zoned neighborhood commercial, and it has been at its present location for twenty years.

On August 7, 1984, the City of Biloxi adopted Ordinance Number 1366.[1] The ordinance restricts the operations of a variety of businesses in Biloxi characterized as "regulated uses." Appellant's business clearly falls within the defined regulated uses.[2] These restrictions are of several kind: [3]

(1) No building housing a regulated use may locate within 100 feet of an exclusive residential zoning district[4] or Keesler Air Force Base.

(2) No regulated use may locate within a 500 foot radius of any other regulated use.

(3) A regulated use located within a residential or limited commercial zoning district and within 100 feet of any exclusive residential or medical services district, or within 1600 feet of Keesler Air Force Base, may not remain open for business past 12 midnight nor open before 10 A.M., Mondays through Saturdays, and not at all on Sundays.

(4) No regulated use may locate within 500 feet of any church, other established place of worship, or school.[5]

(5) No certificate of zoning compliance or certificate of occupancy may be issued to a regulated use located within a residential or limited commercial zoning district and within 100 feet of any exclusive residential or medical services district, or within 1600 feet of Keesler Air Force Base, from and after three years of the date of the ordinance's official adoption. This provision not only prohibits the establishment of new regulated uses in these areas after the three year period has elapsed, but it also bars the sale of existing ones at that time.

The ordinance was adopted after extensive study by the City of Biloxi. A committee specially appointed by the mayor made the original recommendations in November, 1983. These recommendations were re-

---

**1.** Biloxi, Miss., Code of Ordinances of 1959, §§ 21–11.6, 21–5.12, 21–5.13.

**2.** Regulated uses are defined in § 21–11.6(a) and include:

> . . . . .
>
> 3. An adult bookstore which is an establishment, or a segment or section of an establishment, (1) having as a substantial or significant portion of its stock and trade, books, magazines and other periodicals which are distinguished or characterized by the emphasis on matter depicting, describing, or relating to sexually explicit materials as defined in Section 12–24.1(b)(1) of the Code of Ordinances of the City of Biloxi, or (2) selling or displaying books, magazines or other periodicals and customarily not open to the public generally but only to one or more classes of the public excluding any minor by reason of age as a prevailing practice.
> 4. An adult video recording store which is an establishment or a segment of an establishment (1) having as a substantial or significant portion of its stock and trade, film, video tape, or other video recordings which are distin-

> guished or characterized by the emphasis on matter depicting, describing, or relating to sexually explicit material as defined in Section 12–24.1(b)(1) of the Code of Ordinances of the City of Biloxi, or (2) selling or displaying film, video tape or other video recordings and customarily not open to the public generally but only to one or more classes of the public excluding any minor by reason of age as a prevailing practice.

> . . . . .

Other regulated uses include bars, nightclubs, and pool halls that serve liquor, and massage parlors.

**3.** Biloxi Code of Ordinances at § 21–11.6(b)–(f).

**4.** This restriction may be waived by the City Council upon receipt and verification of a petition requesting a waiver by at least sixty percent of the property owners within a 500 foot radius of the proposed location of a regulated use.

**5.** The second and fourth restrictions may be waived by the City Council.

viewed by the Biloxi Planning Commission and the ordinance was developed from this review. Three public hearings were held during this period as well.

At the public hearings a number of concerns were raised about the concentration of regulated uses within the city. It was mentioned that congestion and crime tended to increase as the concentration of regulated uses rose. Concern was also voiced over the effect of these businesses upon children and family life in surrounding neighborhoods. These concerns were summarized in the ordinance's preamble. The ordinance appears to be a comprehensive attempt by Biloxi city officials to control a particular kind of problem which many persons believe is common to urban communities today. It is not directed solely against adult bookstores and theaters, but it also regulates a variety of businesses serving alcohol that do not deal in First Amendment materials.

Star Satellite brought suit to challenge the ordinance in the United States District Court for the Southern District of Mississippi on August 20, 1984. It requested declaratory relief, injunctive relief, and damages. On September 21, 1984, Star Satellite moved for a preliminary injunction to bar the ordinance's enforcement. The district court found that Star Satellite did not have standing to challenge the ordinance except with regards to the hours of operation and Sunday closing restrictions, and the resale limitation. Star Satellite originally had filed this suit on behalf of a class of businesses affected by the ordinance. The district court, however, denied Star Satellite class certification. Star Satellite's appeal of the denial of class certification has been dismissed by this Court. *Star Satellite v. Biloxi*, No. 85–4068 (5th Cir. June 17, 1985). Star Satellite appeals the denial of its motion for a preliminary injunction.

## II. STANDING

The ordinance affects Star Satellite only by limiting its operation to the hours of 10 A.M. to 12 midnight, Mondays through Saturdays, and by requiring it to remain closed on Sundays. We find that Star Satellite has standing to challenge these time restrictions. Star Satellite has made no showing that its owners intend to sell the business now or in the foreseeable future. While the district court found that Star Satellite had established standing to challenge the ordinance's resale restriction, we see no need to resolve that issue at this preliminary injunction phase of the case.

Star Satellite, nonetheless, contends that it has standing to challenge the resale provisions and also the other provisions because the ordinance is overbroad on its face. It seeks to assert the rights of third parties who may be affected by the ordinance but who are not parties to this action.

Because an overbroad statute may deter people from engaging in constitutionally protected activity, courts have been willing to relax to some extent traditional standing restrictions. *Broadrick v. Oklahoma*, 413 U.S. 601, 611, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973). The exception is limited, however. A statute's overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615 & n. 4, 93 S.Ct. at 2918 & n. 4. The ordinance before us does not present in its overall application substantial restraints upon First Amendment liberty. The ordinance, indeed, does not even implicate First Amendment rights for some regulated uses. There are, moreover, many locations in Biloxi unaffected by the ordinance where First Amendment materials of the kind carried by Star Satellite may be sold.

Third party standing is also not permitted when a potentially overbroad statute is subject to a narrowing construction. *Young v. American Mini Theater*, 427 U.S. 50, 60, 96 S.Ct. 2440, 2447, 49 L.Ed.2d 310. The sweep of this ordinance is subject to state interpretation. *Cf. Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020, 1034 (5th Cir.1981). Star Satellite

contends, however, that the Mississippi Supreme Court will not provide such a construction. It argues that Mississippi courts will choose, instead, to place this responsibility on the legislature. *ABC Interstate Theatres, Inc. v. State*, 325 So.2d 123, 126 (Miss.1976). We do not accept this anticipatory defeat of whatever legitimate claims other businesses may have. In *Interstate Theatres*, the Mississippi Supreme Court was asked to construe "authoritatively" a Mississippi statute prohibiting the showing, owning, or operating of any "obscene, indecent, or immoral" picture. The Mississippi Supreme Court refused to do so in large part because the state constitution mandated that the state legislature determine the meaning of criminal statutes. This conclusion, however, does not mean that the Mississippi Supreme Court has abdicated its responsibility to interpret legislative enactments. It will do so when it can ascertain the intent of the legislature and impose a reasonable construction upon a statute to save it from unconstitutionality. *See Baker v. State*, 327 So.2d 288, 291 (Miss.1976).[6]

### III. HOURS OF OPERATION RESTRICTIONS

■ A preliminary injunction may be issued only after the moving party has established four prerequisites: first, there is a substantial likelihood it will ultimately succeed on the merits; second, the moving party will suffer irreparable harm if the injunction is not issued; third, the threatened harm to the moving party will outweigh any potential injury the injunction may cause the opposing party; and finally, the injunction, if issued, will not be adverse to public interest. *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir.1979). The decision to issue or not to issue an injunction is subject to considerable, though not unbridled, discretion in the district court. *Id.* The district court has not abused its discretion here. Star Satellite

has not met the requisites with regard either to its claim under the United States Constitution or under state law.

### A. *Constitutional Challenges*

■ A community's zoning authority is a valid exercise of its police power. *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1212 (5th Cir.1982). Generally zoning decisions are afforded considerable deference. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 8, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797 (1974). When, however, a community's zoning plan infringes upon First Amendment rights, its validity becomes subject to greater concern. Zoning laws which implicate First Amendment considerations must be narrowly drawn in furtherance of a substantial governmental interest. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981).

■ Reasonable time, place, and manner regulation of protected speech, when necessary to further a significant governmental interest, is permitted. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 63 n. 18, 96 S.Ct. 2440, 2449 n. 18, 49 L.Ed.2d 310 (1976). Subjecting the commercial exploitation of First Amendment materials to reasonable zoning regulation does not constitute a prior restraint. *Young*, 427 U.S. at 62, 96 S.Ct. at 2448. The ordinance here questioned restricts the operation of regulated uses to fourteen hours a day six days a week. The time restrictions do not suppress all sexually explicit speech within Biloxi. The ordinance thus does not provide for the total exclusion of some kinds of speech, as did the ordinance in *Schad*. In *Schad*, the challenged ordinance prohibited all live entertainment within Mount Ephraim. 452 U.S. at 63, 101 S.Ct. at 2180. The Supreme Court held that this exclusion went beyond reasonable zoning regulation, and it struck

---

**6.** Star Satellite also urges us to grant it standing to challenge all the ordinance's provisions because a number of other Biloxi businesses have become parties to this suit recently. We reject this entreaty as well. Whether or not new parties to this suit have standing to contest other provisions of the ordinance is of no avail to Star Satellite. Star Satellite was the only party of record at the time it sought a preliminary injunction.

down the ordinance. Appellant has not established the likelihood of success on this issue.

Our decision in *Beckerman v. City of Tupelo*, 664 F.2d 502, 512 (5th Cir.1981), involving restrictions on parades, does not require us to invalidate the restrictions at issue here. We did not void the ordinance in *Beckerman* that prohibited the issuance of permits for parades held after 6 P.M. because it was unconstitutional to regulate parades. Rather, we held that the 6 P.M. restriction in *Beckerman* was arbitrary. It was not related to Tupelo's concern for parade security during evening hours because for much of the year it is daylight in Tupelo until well past 6 P.M.

, █ Star Satellite also contends that the ordinance's hours of operation restrictions violate the Equal Protection guarantees of the Fourteenth Amendment in singling out businesses that provide sexually explicit materials. A community's interest in furthering the welfare of its neighborhoods justifies its regulation of sexually explicit commercial speech so long as such regulation is restricted to protect designated neighborhoods justifiably and does not constitute a broad ban on the availability of such material throughout the community. *Young*, 427 U.S. at 66, 96 S.Ct. at 2450. Because the ordinance's time of operation restrictions may further a significant community interest and may well be no more restrictive than reasonable, we find that Star Satellite has not shown the requisite likelihood of prevailing on this issue.

As Star Satellite has not demonstrated a probability of success on the merits of its constitutional challenges, we must reject its motion for a preliminary injunction. It is, therefore, unnecessary for us to consider the remaining three prerequisites for the issuance of such an injunction.

## B. *Pendent State Claims*

Star Satellite also presents two state challenges to the ordinance.[7] First, it con-tends that Biloxi has violated Mississippi law by rezoning without proving that there was either a mistake in the city's original zoning plan or that the character of the neighborhood to be rezoned has changed sufficiently to warrant such rezoning. *Cloverleaf Mall Ltd. v. Conerly*, 387 So.2d 736, 740 (Miss.1980). Second, Star Satellite argues that the ordinance violates Mississippi's blue laws. Neither of these claims, however, supports Star Satellite's motion for a preliminary injunction.

 In urging application of Mississippi's mistake or change rule in zoning, Star Satellite has failed to show either a substantial likelihood of success on the merits or irreparable injury. Biloxi officials carefully studied the effects of regulated uses upon surrounding neighborhoods. There is ample evidence indicating an increase in congestion and in the number of calls for police assistance in areas where regulated uses concentrate. These developments in residential and limited commercial zoning districts throughout Biloxi show that the character of the zoned areas and surrounding neighborhoods may have changed. Moreover, the reasonable possibility is raised that under Mississippi law a mistake was made in prior zoning regulations when regulated uses were permitted to concentrate within these neighborhoods. These grounds appear sufficient to raise reasonable justification for rezoning these areas to impose more stringent restrictions upon the location of regulated uses to the benefit of those areas and surrounding areas as well. Star Satellite, moreover, also has failed to show any injury other than mere financial loss because of this rezoning. As this injury is compensable, it does not qualify as irreparable.

] Star Satellite's contention that the ordinance violates Mississippi's blue laws is without merit. Biloxi city officials may prescribe the hours on Sundays during which businesses otherwise exempt from the state's blue laws must close. Miss. Code Ann. § 97–23–75 (1972). Star Satel-

---

**7.** We consider these claims under the federal courts' pendent jurisdiction. *United Mine Work-*

*ers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

lite also argues that § 97–23–81 of the Mississippi Code discriminates against it by allowing movie theaters to operate after 1 P.M. on Sundays. This argument does not persuade. Star Satellite is not a movie theater. It only sells films, video tapes, and video recordings.

## IV. CONCLUSION

Star Satellite has standing to challenge the hours of operation and Sunday closing restrictions. A preliminary injunction is not warranted as to these provisions. Star Satellite has not demonstrated a substantial likelihood of prevailing on the merits. The judgment of the district court denying the preliminary injunction was correct.

AFFIRMED.