**Joseph FARAONE d/b/a Five Star Video**

v.

**CITY OF EAST PROVIDENCE.**

**No. CA 95–642ML.**

United States District Court,
D. Rhode Island.

April 9, 1996.

84

John W. Dineen, Providence, RI, for plaintiff.

Marc DeSisto, Providence, RI, for defendant.

### MEMORANDUM

LISI, District Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction. Plaintiff, Joseph Faraone, d/b/a Five Star Video, alleges that a license "stipulation" adopted by the East Providence City Council, which prohibits the sale or rental of "any adult oriented x-rated videos on Sundays or Holidays," is preempted by state law and

violates the First Amendment of the United States Constitution. The defendant, the city of East Providence, counters that the restriction placed on all Sunday/holiday sales licenses is permissible under state law and is a valid content-neutral regulation designed to serve a legitimate government interest.

The court conducted a hearing on plaintiff's motion on January 19, 1996, at which time plaintiff introduced the verified complaint and his affidavit into evidence. The defendant offered no evidence. At the conclusion of oral argument, this court granted plaintiff's motion for a preliminary injunction. This memorandum sets forth the rationale for doing so.

### I. BACKGROUND

The facts are not in dispute. Plaintiff owns and operates a video rental and sale business on Willett Avenue in East Providence, Rhode Island. Plaintiff has operated his business for approximately ten years, and holds a state-issued retail license and a city-issued Sunday/holiday sales license pursuant to § 5-23-2 of the Rhode Island General Laws. He rents and sells a wide range of videos, roughly ten percent of which he estimates might be considered "adult oriented" or "x-rated." Plaintiff voluntarily segregates these videos from the remaining collection and places them in a designated area of his store.[1]

Prior to November 1995, the defendant imposed no restrictions on which movies could be rented or sold on Sundays or holidays. By a notice dated November 10, 1995, and directed to all licensees for the sale or rental of videos on Sundays and holidays, the city clerk advised the plaintiff as follows:

The East Providence City Council, meeting in regular session on November 7, 1995, voted unanimously to place the following stipulation on all Sunday/Holiday Sales licenses for video sales and/or rentals:

---

1. By way of example, Faraone advises the court that he moved the unrated movie "Caligula" from the general area of his store to the "adult area" after a customer called its "rather adult" content to his attention. Notwithstanding the fact that the film does not have an "X" rating, Faraone states that he does not know if "Caligula" would be covered by the stipulation because "it may well be considered 'adult-oriented'." Plaintiff's affidavit, p. 2.

There shall be no sales or rentals of any adult oriented x-rated videos on Sundays or Holidays.

The City will be monitoring all video stores to determine if violations are being made.

East Providence, R.I., Notice to All Holders of Video Sunday/Holiday Sales Licenses (Nov. 10, 1995). Plaintiff received this notice as part of the renewal of his annual license for Sunday and holiday sales. The restriction commenced on December 1, 1995. Beginning the following Sunday, December 3, 1995, plaintiff complied with the terms of the notice under protest.

Plaintiff advises that some "adult" movies are unrated, some are rated "NC–17," some are rated "X," and some may be rated "XXX." Further, plaintiff's customers can rent any such movies on the day before a Sunday or holiday and keep them for the entire Sunday or holiday or until the following day. Plaintiff does not rent or sell any illegal products.

## II. DISCUSSION

As noted above, plaintiff challenges the validity of the defendant's stipulation on both state law and constitutional grounds. If plaintiff prevails on his state law claim, this court need not, and should not, reach the constitutional claims. Accordingly, this court will first address the issue of state law preemption.

### A. State Law Claim

Plaintiff asserts that the "stipulation" adopted by the East Providence City Council is preempted by state law. In particular, he points to § 5–23–2(d) of the Rhode Island General Laws, which provides, in pertinent part, that "[r]etail establishments licensed pursuant to this section ... may sell any and all items sold in the ordinary course of business with the exception of alcoholic beverages." R.I.GEN. LAWS § 5–23–2(d). The plaintiff contends that the stipulation impermissibly infringes upon this explicit broad grant of authority given by state law.

Chapter 23 of the Rhode Island General Laws, entitled "Sunday Business," and commonly referred to as the "Sunday Closing Laws," consists of six sections, the pertinent provisions of which are set forth below.[2] The

2. 5–23–1. Definitions.—(a) "Holiday", whenever used in this chapter shall be deemed to include: New Year's day, Memorial day, Fourth of July, Victory day, Labor day, Columbus day, Veteran's day, Thanksgiving day (but only in such years as the governor shall by public proclamation designate such as a legal holiday), and Christmas, or on any day which any enumerated holiday is officially celebrated.

(b) "Retail establishment", whenever used in this chapter, shall be deemed to include any business making sales at retail in this state, but this definition shall not include victualing houses principally serving prepared food for consumption on and off the premises, including those houses licensed under chapter 24 of this title.

(c) "Town council", whenever used in this chapter, shall be deemed to include "city council" except in the city of Providence where it shall mean "bureau of licenses" and any duly constituted licensing authority existing in any other city or town.

5–23–2. Licenses for Sunday and holiday business.—(a) The town council of any town shall grant licenses for the sale by retail establishments at any places in that town or city designated in those licenses, on the first day of the week, commonly called Sunday, and on holidays enumerated in § 5–23–1. However, no license shall be issued on December 25 of any year or on that holiday known as Thanksgiving day, except to:
(1) pharmacies licensed under chapter 19 of title 5; (2) retail establishments which principally sell food products as defined in § 44–18–30(J) and which employ fewer than six (6) employees per shift at any one location; (3) retail establishments principally engaged in the sale of cut flowers, floral products, plants, shrubs, trees, fertilizers, seeds, bulbs, and garden accessories; (4) retail establishments principally engaged in the sale and/or rental of video cassette tapes; and (5) retail establishments principally engaged in the preparation and/or sale of bakery products.

(b) Retail establishments licensed pursuant to this section may be permitted to open for business on Sundays between the hours of 12:00 noon and 6:00 P.M., except that pharmacies licensed under chapter 19 of this title and retail establishments which principally sell food products as defined in § 44–18–30(J) may be open during their normal working hours. Retail establishments licensed pursuant to this section may be permitted to open for business during holidays on their normal business working hours. The city of Newport and the towns of Westerly and Glocester each may, by ordinance, authorize the retail establishments within their respective jurisdictions which are licensed pursuant to this section to remain open for business on Sundays between the hours of 9:00 A.M. and 10:00 P.M. or any portion thereof.

(c) The town of New Shoreham may, by ordinance, authorize the retail establishments within

chapter grants city and town councils the authority to issue Sunday/holiday sales licenses. *See* R.I.Gen.Laws § 5–23–2(a). Section 2 of the statute sets forth the times during which "retail establishments ... may be permitted to open for business," generally between the hours of 12:00 noon and 6:00 p.m. on Sundays and during normal business working hours on holidays. R.I.Gen.Laws § 5–23–2(b).

Additionally, subsections (b) and (c) of § 2 authorize the city of Newport and the towns of Westerly, Glocester and New Shoreham to extend the hours licensees may be open for business on Sundays by ordinance. *See* R.I.Gen.Laws §§ 5–23–2(b) & (c). Subsection (g) provides that retail establishments engaged primarily in the sale and/or rental of video cassette tapes may be open for business on Sundays and holidays from 10:00 a.m. to 10:00 p.m. *See* R.I.Gen.Laws § 5–23–2(g). Subsection (d) provides that retail establishments licensed pursuant to § 2 "may sell any and all items sold in the ordinary course of business with the exception of alcoholic beverages." R.I.Gen.Laws § 5–23–2(d).

Under this chapter, the city or town councils retain broad discretion to

> fix, limit, and specify in the license the hours of the day during which the licensee or licensees may operate and may make those rules, regulations, and conditions relative to the granting, holding and exercising [of] those licenses as [they] may deem

necessary or advisable and as are not inconsistent with law....

R.I.Gen.Laws § 5–23–4. Once granted, the license may be suspended or revoked "at any time" at the "pleasure" of the town or city council. *Id.*

Plaintiff's preemption argument hinges on two discrete phrases from the chapter: (1) "[r]etail establishments ... *may sell any and all items sold in the ordinary course of business,*" R.I.Gen.Laws § 5–23–2(d) (emphasis added); and, (2) the city/town council "may make those rules, regulations, and conditions relative to the granting, holding and exercising [of] those licenses as it may deem necessary or advisable *and as are not inconsistent with law,*" R.I.Gen.Laws § 5–23–4 (emphasis added). In essence, plaintiff contends that the defendant's restriction on what can permissibly be sold or rented on Sundays or holidays conflicts with the "any and all items" language of § 2. Accordingly, he argues that the stipulation violates the proscriptions of § 5–23–4.

■■■ The Rhode Island Supreme Court has articulated rules of statutory construction which, when applied to the statute in question, render plaintiff's argument unavailing. "In construing a statute, the court must give the words their plain and ordinary meaning. If the language of the statute is clear and unambiguous and conveys a definite and sensible meaning that does not con-

---

its jurisdiction which are licensed pursuant to this section to remain open for business on Sundays between the hours of 7:00 A.M. and 9:00 P.M. or any portion thereof.

(d) Retail establishments licensed pursuant to this section shall be exempt from the provisions of Chapter 40 of Title 11, entitled "Sunday Laws", and Chapter 1 of Title 25, entitled "Holidays and Days of Special Observance", and those establishments may sell any and all items sold in the ordinary course of business with the exception of alcoholic beverages.

(e) All retail establishments may sell any and all items sold in the ordinary course of business with the exception of alcoholic beverages after obtaining a license on those Sundays between Thanksgiving day and Christmas between the hours of 10:00 A.M. and 7:00 P.M.

⸱     ⸱     ⸱     ⸱     ⸱

(g) Retail establishments engaged primarily in the sale and/or rental of video cassette tapes shall be licensed in accordance with this section, pro-

vided, however, that the hours of operation on Sundays and holidays may be between the hours of 10:00 A.M. and 10:00 P.M.

⸱     ⸱     ⸱     ⸱     ⸱

5–23–4. Terms and conditions of license—Revocation.—Any such town council in each case of granting such a license shall fix, limit, and specify in the license the hours of the day during which the licensee or licensees may operate and may make those rules, regulations, and conditions relative to the granting, holding and exercising those licenses as it may deem necessary or advisable and as are not inconsistent with law, and may at any time at its pleasure suspend or revoke any such license by it granted. The license shall be displayed in a conspicuous place on the premises licensed.

tradict an evident legislative purpose, the court must apply the words literally." *Rathbun v. Leesona Corp.*, 460 A.2d 931, 933 (R.I.1983) (citation omitted). In so doing, "the court is bound, if it be possible, to give effect to all its several parts. No sentence, clause or word should be construed as unmeaning and surplusage, if a construction can be legitimately found which will give force to and preserve all the words of the statute." *St. Clare Home v. Donnelly*, 117 R.I. 464, 368 A.2d 1214, 1217–18 (1977). Where, however, a statute contains an apparent inconsistency, the court should "constru[e] and appl[y] apparently inconsistent ... provisions in such a manner as to avoid the inconsistency." *Montaquila v. St. Cyr*, 433 A.2d 206, 214 (R.I. 1981).

■ Section 2 of the Sunday Closing Laws confers on city and town councils the authority to grant Sunday/holiday sales licenses. The defendant argues, and this court agrees, that the statute defines the parameters of that authority. These parameters delineate the maximum hours of operation and permit the sale on Sundays and holidays of items sold in the ordinary course of business.

■ This section must be read in *pari materia* with § 4, however, which gives great discretionary authority to the councils to "fix, limit, and specify" the hours of operation of licensees. R.I.GEN.LAWS § 5–23–4. Thus, the city council could limit the plaintiff's Sunday hours of operation to something less than the 10:00 a.m. to 10:00 p.m. time period permitted by the statute. The city council also possesses the authority to make "rules, regulations, and conditions relative to the granting, holding and exercising" of a Sunday/holiday license "as it may deem necessary or advisable and as are not inconsistent with law." *Id.*

To reach the conclusion plaintiff urges, this court would have to read the permissive language of Section 2 as a mandate limiting the defendant's licensing authority. This would require the court to ignore the clear intent of the legislature: to permit Sunday sales generally, but to allow each municipality to regulate the activity as it sees fit. Indeed, the municipality may at its pleasure suspend or revoke any such license it has granted. *See*

*id.* The General Assembly could not have been more clear in announcing its intent to give to the local governing bodies the authority to regulate, summarily curtail, or suspend the operations of Sunday/holiday licensees.

Having considered and rejected plaintiff's state law preemption argument, this court turns its attention to his First Amendment claim.

### B. First Amendment Claim

Plaintiff contends that the stipulation attached to his Sunday/holiday sales license contravenes the First Amendment guarantee of freedom of speech because it is a content-based regulation of protected speech that does not serve any legitimate government interest. As such, plaintiff argues that the stipulation must be subjected to strict judicial scrutiny. The defendant avers that the stipulation is not aimed at the content of the banned videos; rather, that the restriction should be analyzed as a "time, place, or manner regulation" aimed at the "secondary effects" of the operation of plaintiff's business "on the surrounding community." Accordingly, the defendant contends that the stipulation should be subjected to intermediate scrutiny.

■ In order to apply the proper level of scrutiny to the stipulation now before the court, it must first be determined whether the stipulation is "content-based" or "content-neutral." "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989); *see also National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 737 (1st Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). A municipality is not required to "steer away from content at all costs, or else risk strict scrutiny. 'A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.'" *National Amusements, Inc. v. Town of Ded-*

*ham,* 43 F.3d at 737 (quoting *Ward v. Rock Against Racism,* 491 U.S. at 791, 109 S.Ct. at 2753).

■ The defendant argues that the Sunday/holiday restriction is a permissible time, place, or manner regulation, and thus should be subject to the less exacting test of intermediate scrutiny, because it does not ban the sale or rental of these videos altogether, but rather provides that the sales or rentals may not take place on Sundays or holidays. In so doing, however, the defendant completely ignores the blatant content-based description of those items which are banned. The license stipulation here targets "adult oriented x-rated videos." The members of the East Providence City Council, the individuals responsible for monitoring compliance, and the plaintiff must refer to the message, *i.e.,* the content, of the subject videos in order to discern whether their sale or rental on Sundays or holidays is prohibited. Clearly, the stipulation is aimed at regulating the content of the speech and, therefore, must be subjected to strict judicial scrutiny.

The defendant attempts to sidestep this outcome by asserting that the stipulation is aimed at curbing the "secondary effects" of the video rental and sales business on the surrounding community. The defendant contends that it can permissibly restrict this form of speech on these grounds because of a compelling interest in "attempting to preserve the quality of urban life." In support of this contention the defendant cites to four cases, *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), *Mitchell v. Commission on Adult Entertainment Establishments,* 10 F.3d 123 (3d Cir.1993), and *Star Satellite, Inc. v. City of Biloxi,* 779 F.2d 1074 (5th Cir.1986), in which restrictions on adult-oriented businesses were permitted because they were designed to curb the secondary effects generated by the operations of those businesses.

In making this argument, however, the defendant offers no evidence that it researched the issue of "secondary effects" of the sale or rental of these types of videos on Sundays or holidays in East Providence, or

that any such effects exist. Instead, the defendant relies on *City of Renton* for the proposition that "[t]he First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. at 51–52, 106 S.Ct. at 931–32. The defendant then cites two cases, *Mitchell* and *Star Satellite,* which it contends contain evidence of secondary effects which justify deeming the stipulation content-neutral. For several reasons, however, the defendant once again misses the mark.

First, the defendant has presented no evidence to suggest that it relied upon the experiences or studies of any other municipalities, including those in *Mitchell* and *Star Satellite,* at the time it adopted the stipulation. Thus, notwithstanding the absence of independent inquiry on the part of the defendant, it still cannot be said that the stipulation was designed to combat any undesirable effects of plaintiff's business.

Second, even if the defendant had relied upon the evidence of secondary effects outlined in *Mitchell* and *Star Satellite,* it is difficult to see how those studies would be relevant to the facts in this case. In those cases, the primary, if not exclusive, menu of regulated activity consisted of adult oriented or sexually explicit entertainment. *See Mitchell v. Commission on Adult Entertainment Establishments,* 10 F.3d at 127 (appellant sold books, magazines, films, and novelties of an adult nature and provided adult films and videos for viewing from within completely enclosed booths); *Star Satellite, Inc. v. City of Biloxi,* 779 F.2d at 1077 (appellant operated adult bookstore selling sexually explicit books, magazines, films, video tapes, and video recordings). Here, the proprietor, based on his subjective discernment, estimates that "about ten percent of [his] total stock may fall in the category of 'adult-oriented'." Plaintiff's affidavit, p. 2.

It is clear to this court that the secondary effects that generally underlie the regulation

of adult oriented businesses—for example, "traffic congestion, parking problems, the performance of sexual acts in public, ... the littering of discarded sexually explicit materials near residential communities," *Mitchell v. Commission on Adult Entertainment Establishments,* 10 F.3d at 132, and the increase in congestion and crime associated with the concentration of regulated uses, *see, e.g., Star Satellite, Inc. v. City of Biloxi,* 779 F.2d at 1078—are not likely to be present in this case. Here, there is no on-premises adult entertainment. Individuals who patronize plaintiff's business are on the premises for only so long as it takes to purchase or rent a videotape. Customers do not view the movies at plaintiff's store.

Accordingly, the defendant's attempt to categorize this stipulation as one which may be viewed through the lens of intermediate scrutiny must fail.

Strict scrutiny is desirable in circumstances in which restrictions on speech are content-based because "such laws 'pose the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information or manipulate the public debate through coercion rather than persuasion.'" *National Amusements, Inc. v. Town of Dedham,* 43 F.3d at 736 (quoting *Turner Broadcasting Sys., Inc. v. FCC,* 512 U.S. 622, ——, 114 S.Ct. 2445, 2459, 129 L.Ed.2d 497 (1994)). Indeed, courts generally "treat content-based regulations as 'presumptively invalid' under the First Amendment." *Id.* (quoting *R.A.V. v. City of St. Paul,* 505 U.S. 377, 381, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992)). In order to clear this constitutional hurdle, a content-based regulation must be (1) necessary to serve a compelling state interest and, (2) narrowly drawn to achieve that end. *See id.; see also Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 231, 107 S.Ct. 1722, 1728, 95 L.Ed.2d 209 (1987).

In this case, the defendant has failed to rebut the presumption of invalidity. The defendant has offered no palpable justification for restricting the rental or sale of the videos on Sundays or holidays. Accordingly, I conclude that the stipulation constitutes an impermissible abrogation of the freedom of speech guaranteed by the First Amendment. Since this determination is dispositive, I need not reach plaintiff's claim that the stipulation is also impermissibly vague.

## III. INJUNCTIVE RELIEF

In determining the appropriateness of granting or denying a preliminary injunction, four factors must be taken into account:

1. The likelihood of success on the merits;

2. The potential for irreparable injury;

3. A balancing of the relevant equities (most importantly, the hardship to the non-movant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld); and

4. The effect on the public interest of a grant or denial of the restrainer.

*Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir.1991); *see also AFL–CIO Laundry and Dry Cleaning Int'l Union v. AFL–CIO Laundry,* 70 F.3d 717, 718 (1st Cir.1995); *Cohen v. Brown Univ.,* 991 F.2d 888, 902 (1st Cir.1993). In the present case, it is clear that plaintiff has satisfied each of the four elements.

First, this court has determined that the stipulation is a content-based regulation which impermissibly encroaches on the exercise of free speech as guaranteed by the First Amendment. The court therefore finds that plaintiff has demonstrated a strong likelihood of success on the merits of his claim.

Second, plaintiff has argued and this court agrees, that without injunctive relief, both he and his customers will be irreparably harmed. Enforcement of this stipulation would result in a ban on the sale or rental of the proscribed videos on Sundays and the nine holidays listed in § 5–23–1(a). As there is no dispute that the videos in question contain constitutionally protected speech, the city's attempt to curtail their dissemination would result in an abridgement of the right of free speech. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976);

*see also Romero Feliciano v. Torres Gaztambide,* 836 F.2d 1, 4 (1st Cir.1987).

Third, it is clear to this court that the plaintiff will suffer greater harm if the injunction is denied than the defendant will suffer if it is granted. In reaching this conclusion, this court takes into consideration the First Amendment freedoms at stake. A denial of a preliminary injunction in this case would result in the deprivation, albeit it on an intermittent basis, of one of plaintiff's and his customers' "most precious ... constitutional rights." *National Amusements, Inc. v. Town of Dedham,* 43 F.3d at 736. On the other hand, enjoining the enforcement of the restriction simply restores the *status quo ante.* The defendant has produced no evidence that such a return will result in any cognizable harm.

Finally, the public interest will not be adversely affected by an order enjoining enforcement of the stipulation. Much to the contrary, the public interest will be served by issuance of an injunction which will safeguard a most sacrosanct constitutional right.

For these reasons, plaintiff's Motion for Preliminary Injunction has been granted.