James WOLFF, Cheryl Wolff, d/b/a A–V Room; Richard Hanson d/b/a 3rd Street Video; and Margaret Hanson, d/b/a Third Street Video, Plaintiffs,

v.

CITY OF MONTICELLO, a municipal corporation, Defendant.

Civ. No. 4–92–279.

United States District Court, D. Minnesota, Fourth Division.

Oct. 20, 1992.

Randall D.B. Tigue, Minneapolis, Minn., for plaintiffs.

James J. Thompson, Robert A. Alsop, Holmes & Graven, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, Chief Judge.

This matter is before the Court on cross-motions for summary judgment. Plaintiffs' motion will be granted, and defendant's motion will be denied.

FACTS

Plaintiffs James Wolff and Cheryl Wolff operate a video rental store known as the A–V Room in Monticello, Minnesota. Plaintiffs Richard Hanson and Margaret Hansen operate a video rental store known as 3rd Street Video in Monticello. The video stores offer for rent both general release videotapes and adult-only videotapes. The adult-only portion of each business comprises less than ten per cent of its total floor space. In this action, plaintiffs challenge the legality of Monticello ordinances regulating adult-only enterprises.

In July 1990, after an adult bookstore opened in the nearby city of Ramsey, the Monticello City Council began to consider regulating adult-oriented land uses. The council's first action was to impose a moratorium on the development of adult-oriented land uses, pending a study on the issue of regulating such land uses. The council employed a planning consulting firm to give the city advice on the issue. In December 1991 and January 1992, the city's planning commission studied the issue as well. After reviewing draft ordinances, the consultant's memorandum, a list of municipal studies on the impact of adult uses, a summary of a Rochester, Minnesota report on the issue, and a Minnesota Attorney General report on the regulation of sexually-oriented businesses, the planning commission adopted findings and conclusions supporting zoning regulations and licensing requirements for adult uses. Affidavit of Jeff O'Neill ¶ 2–7.

On January 23, 1992, the city council adopted Resolution 92–1, which sets forth findings and conclusions regarding zoning regulations for adult uses. In Resolution 92–1, the council found that adult land uses have adverse impacts on the neighborhoods around them, such as increased crime rates, lowered property values, increased transiency, and decreased stability of ownership. The council also found that the adverse impacts of adult land uses diminish as the distance from the use increases. The council based its findings in part on studies conducted by other cities having characteristics similar to Monticello. O'Neill Aff.Ex. 14.

Based on its findings, the council adopted Ordinance Amendment No. 217, which establishes a zoning category of "adult uses," defines those uses, and restricts them to particular parts of the city. The ordinance divides adult uses into two categories: "adult use/accessory," which applies to businesses that offer adult-oriented goods and services on a limited scale, and "adult use/principal," which applies to businesses that offer adult-oriented goods and services as part of their primary activity. The parties to this action agree that the plaintiffs' video stores fall within the adult use/accessory category.

In addition to regulating the location of adult use businesses, Ordinance Amendment No. 217 regulates the advertising of those businesses. The ordinance provides that "Adult use/accessory activities shall be prohibited from both internal and exter-

nal advertising and signing of adult materials and products." Ord.Am. No. 217 § II(D)4.

On January 27, 1992, the city council adopted Resolution 92–3, which incorporates the findings of Resolution 92–1, and states that the adverse impacts of adult uses can be regulated by licensing operators of adult-only businesses. At the same time that it adopted Resolution 92–3, the city counsel also adopted Ordinance Amendment No. 219, which establishes licensing requirements for adult use businesses. The ordinance establishes a yearly application process, with an annual fee of $250 for adult use/accessory licenses and $1000 for adult use/principal licenses. It requires the city counsel to hold a public hearing on the license within forty-five days of an application and to grant or refuse the license within forty-five days after the public hearing. Persons who have been convicted of certain felonies, including violent felonies, drug-related felonies, and felonies involving moral turpitude, are ineligible for a license, although the city council has authority to waive this restriction. Among the conditions attached to adult use licenses is that city inspection officials must have an unqualified right to enter, inspect, and search the premises of a licensee during business hours.

In March 1992, plaintiffs initiated this action, alleging that portions of Ordinance Amendments 217 and 219 are unconstitutional. Plaintiffs and defendant have each moved for summary judgment.

DISCUSSION

A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91

L.Ed.2d 202 (1986). The role of a court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987). "In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences to be drawn from the facts." *AgriStor Leasing,* 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.,* 824 F.2d 582, 585 (8th Cir. 1987), *cert. denied,* 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

I. *The Licensing Requirement*

Plaintiffs argue that Ordinance Amendment No. 219 is unconstitutional on its face because it subjects them to a burdensome licensing requirement solely on the basis of the content of the video tapes that they rent.[1] Such content-based regulation, they argue, violates the First Amendment. Defendant argues that Ordinance Amendment No. 219 is a content-neutral time, manner and place restriction that is justified by the need to regulate the adverse secondary effects of adult uses.

Regulations that are enacted for the purpose of restraining speech on the basis of its content are presumptively inval-

---

1. In their complaint, plaintiffs base their claims on both the United States and the Minnesota constitutions. However, the parties have not

identified any ways in which the protections of the state and federal constitutions vary.

**1572**

id. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986). However, licensing requirements are not constitutionally invalid merely because they regulate the commercial exploitation of material that is protected by the First Amendment.[2] *Young v. American Mini Theatres,* 427 U.S. 50, 62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976). Rather, adult uses may be subjected to content-neutral time, manner, and place restrictions that are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication. *Renton,* 475 U.S. at 47, 106 S.Ct. at 929. A regulation is content-neutral if it is justified without reference to the content of the regulated speech. *Id.* (quoting *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976)).

Applying these standards, the *Renton* Court held that a zoning ordinance that restricted the location of theaters showing adult-only films was constitutionally permissible where the city's predominant concern in enacting the ordinance was with the secondary effects of adult theaters and not with the content of the films themselves. *Id.* 475 U.S. at 47, 106 S.Ct. at 929. In addition, the *Renton* court held that in determining whether the secondary effects of adult uses justified regulation, a city need not conduct its own studies or generate its own evidence of adverse secondary effects, but may rely on the studies and experiences of other cities. *Id.* at 49, 106 S.Ct. at 930.

■ Defendant argues that the licensing provisions at issue here are permissible under *Renton,* because the city council enacted the ordinance to control the secondary effects of adult uses. In making this argument, defendant relies on the council's findings that studies from other municipalities had demonstrated that adult uses had adverse secondary effects such as reduced property values, increased crime, and neighborhood blight. Defendant also points out that in deciding whether to grant or deny a license, the city council has no right to view the adult-only material, and exercises no censorship over its contents. Thus, defendant argues, the ordinance contains no implication that the licensing requirement is based on the content of the material being distributed.

Plaintiffs argue that the licensing provisions at issue here cannot be justified under *Renton,* because the record does not support a finding that adult use/accessory businesses, as opposed to adult use/principal businesses, have adverse secondary effects on the surrounding community. Plaintiffs point out that the studies relied upon by defendant deal solely with the adverse secondary effects of adult use/principal businesses. Moreover, in discussing whether to subject adult use/accessory businesses to the licensing requirements, one council member noted that the city had received no complaints about businesses selling adult magazines and video tapes as accessory adult uses, and questioned whether it was necessary to require such businesses to be licensed. O'Neill Aff.Ex. 16 at 3. Thus, plaintiffs argue that far from supporting the city's restrictions on adult use/accessory businesses, the record shows that no such restrictions are necessary.

■ Under *Renton,* a city may rely on the experiences of other cities to determine whether certain businesses have adverse secondary effects. Once a city determines that regulation is necessary, it is not limited to a single method of regulation, but is afforded a reasonable opportunity to experiment with solutions to the problem. *Renton,* 475 U.S. at 51, 106 S.Ct. at 931. Thus, nothing in *Renton* precludes the city from setting up a two-tiered system, under which business are subjected to varying degrees of regulation depending on the degree to which they deal in sexually explicit material. *Renton* does, however, require the city to base its decision to regulate in

---

**2.** Defendant does not argue that the videotapes rented at plaintiffs' stores are obscene and thus not entitled to First Amendment protection.

fact. *Renton* imposes this requirement in two ways. First, the evidence upon which the city bases its findings must be "reasonably believed to be relevant to the problem that the city addresses." *Renton*, at 51–52, 106 S.Ct. at 931. Second, the regulation that the city ultimately adopts must be "narrowly tailored to affect only that category of [businesses] shown to produce the unwanted secondary effects." *Id.*

Studies from other cities regarding the secondary effects of adult uses are clearly relevant to Monticello's decision to regulate such uses, and the city may legitimately rely upon them to devise its own regulatory scheme. However, the Court finds that the city has failed to show that its regulatory scheme is narrowly tailored to affect only the category of businesses shown to produce the unwanted secondary effects. Defendant has pointed to nothing in the record to indicate that all businesses dealing in sexually explicit material, regardless of the degree to which they deal in such material, create adverse effects such as crime and urban blight. Indeed, as plaintiffs point out, the only evidence in the record regarding the effects of businesses such as plaintiffs' is that those businesses do not have the adverse secondary effects of businesses that deal in sexually explicit materials on a larger scale.

Defendant appears to believe that because businesses that deal primarily in sexually explicit material create adverse secondary effects, it can be assumed that businesses that deal in such material on a limited scale create the same effects. Defendant points to no evidence, however, showing that such an assumption is valid. Therefore, the Court finds that the licensing ordinance, as it relates to adult use/accessory businesses, is unconstitutional under *Renton*.

## II. *The Licensing Procedure*

A licensing scheme for businesses that purvey sexually explicit but constitutionally protected speech may be viewed as a prior restraint on that speech; nonetheless, such a scheme is constitutionally permissible if it contains safeguards that minimize the possibility that the licensing procedure will be used to suppress speech. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 224–27, 110 S.Ct. 596, 604–05, 107 L.Ed.2d 603 (1990). In *FW/PBS*, the Court set forth three requirements for licensing ordinances governing sexually-oriented businesses. First, the regulation cannot place unbridled discretion in the hands of a government official or agency. *Id.* at 225, 110 S.Ct. at 605 (citing *Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 2144, 100 L.Ed.2d 771 (1988). Second, the licensor must decide whether to issue the license within a specified and reasonable time. *Id.* 493 U.S. at 227, 110 S.Ct. at 606 (citing *Freedman v. Maryland*, 380 U.S. 51, 58–59, 85 S.Ct. 734, 738–39, 13 L.Ed.2d 649 (1964)). Third, there must be the possibility of prompt judicial review in the event that the license is erroneously denied. *Id.* Plaintiffs argue that Ordinance Amendment No. 219 is unconstitutional because it fails to satisfy the first two of these requirements.

### A. *The Council's Discretion to Issue or Grant the License*

An ordinance subjecting the exercise of First Amendment freedoms to the prior restraint of a license is unconstitutional unless the ordinance contains narrow, objective, and definite standards to guide the licensing authority. *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150–51, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969). In arguing that Ordinance Amendment No. 219 is unconstitutional under this standard, plaintiffs rely on section 3–13–1(D)(1) of the ordinance, which provides:

> The City Council shall investigate all facts set out in the application and hold a public hearing within forty-five (45) days after the City Administrator receives the application. Opportunity shall be given to any person to be heard for or against the granting of the license.

> After such investigation and administrative hearing, the City Council shall grant or refuse the application....

Ord.Am. No. 219 § 3–13–1(D)(1). Plaintiffs point out that the section sets forth no standards for granting or denying the application; thus, they argue, the decision is left entirely to the discretion of the city council. In addition, plaintiffs maintain that there would be no need for a public hearing if the granting of the license was a ministerial, rather than a discretionary, act.

In response, defendant argues that sections 3–13–1(E) and (F) of the ordinance set forth the exact criteria for the persons and places eligible for the license. Defendant asserts that if an applicant complies with these criteria, the city council is required to issue the license. Therefore, defendant argues, the issuance of the license is essentially a ministerial act that meets the requirements of *Shuttlesworth* and *FW/PBS*. Finally, defendant asserts that section 3–13–1(D)'s requirement that the council hold a public hearing does not indicate that the council has unbridled discretion to grant or deny licenses, because the only purpose of the hearing is to determine whether the applicant and the premises are eligible for the license.

■ The problem with defendant's argument is that it is not supported by the language of the ordinance. Contrary to defendant's assertion, sections 3–13–1(E) and (F) do not set forth the criteria for persons and places eligible for a licenses; rather, the sections state that certain persons and places are *ineligible* for a license. Moreover, there is no provision in the ordinance requiring the city council to grant license applications for any person or place that is not rendered ineligible under sections 13–1(E) and (F). Limits on discretion in licensing schemes must "be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 770, 108 S.Ct. 2138, 2151, 100 L.Ed.2d 771

(1988). Thus, the city may neither rely on claims of implied limits nor ask the Court to write limits into a silent regulation. *Id.* Because Ordinance Amendment 219 does not contain narrow, objective, and definite standards to control the city council's decision to grant or deny a license, the Court finds it is unconstitutional under *FW/PBS*.

### B. *The Time Allowed for the Council's Decision*

■ As noted above, a licensing scheme applied to businesses engaging in constitutionally protected conduct is invalid if it fails to place limits on the time within which the licensing decision must be made. In *FW/PBS*, the Court held that the licensing decision must be made "within a specified and reasonable time period during which the status quo is maintained." [3] *FW/PBS*, 493 U.S. at 227, 110 S.Ct. at 606.

Plaintiffs assert that the city's licensing scheme fails to comply with *FW/PBS* because under the ordinance their video stores would be closed during the ninety days in which a license application could be pending. In response, defendant submits the affidavit of the city administrator, who states that the city has taken no action to enforce the ordinance against the plaintiffs and that if plaintiffs had applied for a license, the city would have allowed them to continue renting adult-only videotapes pending a final decision on the license application. Thus, defendant argues that in this case, the status quo would be maintained during the decision making process, as required by *FW/PBS*.

Again, defendant's argument fails because it is not rooted in the language of the ordinance. The ninety-day time period prescribed in the ordinance does not appear to be unreasonable per se. However, the ordinance contains no provision to assure that the status quo is maintained during that time. Rather, the ordinance provides

---

**3.** Relying on *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1964), plaintiffs argue that the decision must be made within the briefest possible time. *Freedman*, however, set forth the procedural standards governing the decisions of a motion picture censorship board. In *FW/PBS*, the Court noted that the full proce-

dural requirements of *Freedman* were not necessary for a licensing scheme, which does not present such grave dangers of censorship. *FW/PBS*, 493 U.S. at 227, 110 S.Ct. at 606. Thus, contrary to plaintiffs' assertion, *FW/PBS* did not adopt the *Freedman* standard, but modified it.

that "no person ... shall operate an adult use ... without having first secured a license...." Ord.Am. No. 219 § 3–13–1(A). It makes no provision for the continued operation of an existing adult use pending the completion of the application process. Defendant attempts to evade this issue by promising not to enforce the ordinance against these plaintiffs during the pendency of this action. The issue here, however, is whether the ordinance, on its face, meets the requirements of *FW/PBS.* Because the ordinance does not preserve the status quo during the licensing application process, the Court finds that it is unconstitutional under *FW/PBS.*[4]

### III. *The Advertising Provision*

■ Finally, plaintiffs challenge the advertising restrictions of Ordinance Amendment No. 217, which prohibits adult use/accessory businesses from using "both internal and external advertising and signing of adult materials and products." Ord.Am. No. 217 § II[D]4. Plaintiffs argue that this provision is facially unconstitutional, because it absolutely bars the advertisement of lawful products. In response, defendant argues that the provision does not prevent a business from advertising its adult-only business, and that because plaintiffs have failed to establish that the provision unreasonably restricts their ability to advertise, the city is entitled to summary judgment on this claim.

■ Commercial speech that concerns lawful activity and is not misleading may be restricted only if the restriction seeks to implement a substantial governmental interest, directly advances that interest, and reaches no further than necessary to accomplish the given objective. *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 507, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800 (1981); *Bd. of Trustees of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 474, 109 S.Ct. 3028, 3032, 106 L.Ed.2d 388 (1989). Under this test, defendant bears the burden of justifying its restrictions. *Fox,* at 480, 109 S.Ct. at 3035 (citing *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 645, 105 S.Ct. 2265, 2279, 85 L.Ed.2d 652 (1985)).

■ Defendant has failed to meet this burden. On its face, the ordinance is a total ban on speech that defendant does not argue is misleading or concerns unlawful activity. Defendant attempts to evade the plain language of the ordinance with the affidavit of the city administrator, who states that section II[D]4 was intended only to prohibit the visual depiction of adult-only material in areas that would be open to minors and members of the public who preferred not to view that material, and that the section does not prevent the operators of adult use/accessory businesses from advertising their businesses. O'Neill Aff. ¶ 5. Defendant may not rely on the statement of the city administrator to establish a construction of the ordinance that is not supported by its text. Moreover, defendant has not even attempted to argue that the restriction furthers a substantial state interest and is narrowly tailored to accomplish that end; instead, defendant attempts to shift the burden to plaintiffs to demonstrate that the ordinance unreasonably restricts their ability to advertise. Because defendant has failed to establish that the advertising restriction satisfies First Amendment scrutiny, the Court holds that the restriction is unconstitutional.

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that:

1. defendant's motion for summary judgment is denied;

2. plaintiffs' motion for summary judgment is granted;

3. defendant is hereby enjoined from enforcing section II[D]4 of Ordinance Amendment No. 217; and

---

4. In addition to challenging the licensing requirement and procedure of Ordinance Amendment No. 219, plaintiffs challenge portions of the ordinance disqualifying certain convicted felons from obtaining a license, subjecting regulated businesses to city inspections, and assessing a licensing fee on adult use businesses. Because the Court finds Ordinance Agreement No. 219 unconstitutional under *Renton* and *FW/ PBS,* it does not reach these issues.

4. defendant is hereby enjoined from enforcing Ordinance Amendment No. 219 in its entirety.

LET JUDGMENT BE ENTERED AC-CORDINGLY.