**WIL–KAR, INC., d/b/a Video Update, Inc., Plaintiff,**

v.

**VILLAGE OF GERMANTOWN, Defendant.**

No. 01–C–0266.

United States District Court, E.D. Wisconsin.

Aug. 13, 2001.

John L DeStefanis, Fuchs Snow De-Stefanis, Milwaukee, WI, for Village of Germantown, defendants.

## DECISION AND ORDER

ADELMAN, District Judge.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Video Update, a business that rents and sells videotapes, brings this action under 42 U.S.C. § 1983 challenging the constitutionality of a Village of Germantown ordinance requiring "adult-oriented establishments" to obtain a license in order to operate.  Germantown, Wis., Ord. § 12:24 (1992) [hereinafter "Ord."]. Plaintiff rents and sells videos of general distribution to all audiences and devotes about five percent of its square footage to adult material.  About two percent of plaintiff's 30,000 videos are in the adult category, and it derives about seven percent of its average weekly revenue of about $8,000 from renting and selling such videos.  Plaintiff has always displayed its adult videos in a separate section from which minors are excluded.  Plaintiff has been in business since 1991, and the ordinance was enacted in 1992.

In January 2001 a Germantown police officer inspected the store and ordered the adult section closed because plaintiff did not have an adult-oriented establishment license as required under the ordinance. Immediately thereafter plaintiff applied for a license, submitting an application, a $250 fee, and other required material including its owners' fingerprints and employment histories.  In February 2001, over objections from the village attorney and police chief, the village board granted plaintiff a license subject to the conditions that its adult videos remain segregated and that no advertising of such videos be visible from the building's exterior.

Plaintiff argues that the licensing ordinance violates the First Amendment both on its face and as applied. Plaintiff contends that the ordinance is overbroad, a prior restraint, and unconstitutional in other respects. Plaintiff now moves for a preliminary injunction.[1]

## II. REQUIREMENTS FOR PRELIMINARY INJUNCTION

■ To obtain a preliminary injunction, plaintiff must show (1) a reasonable likelihood of success on the merits; (2) that it has no adequate remedy at law; (3) that it will suffer irreparable harm if an injunction does not issue; (4) that the threatened injury it faces outweighs the injury defendant will suffer if the injunction is granted; and (5) that an injunction is in the public interest. *JAK Prods., Inc. v. Wiza*, 986 F.2d 1080, 1084 (7th Cir.1993). Although in theory these elements are distinct, in the First Amendment context they essentially reduce to the question of whether plaintiff is likely to succeed on the merits. *Tanford v. Brand*, 883 F.Supp. 1231, 1237 (S.D.Ind.1995). This is because the loss of First Amendment freedoms is presumed to constitute irreparable harm, and irreparable injury establishes that there is no adequate remedy at law. Further, because governmental compliance with the First Amendment always serves the common good, the public interest also turns on the merits. *Id.*

## III. STANDARD OF REVIEW

■ The First Amendment, as made applicable to the states through the Fourteenth Amendment, provides that, "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend I. The Germantown ordinance is a licensing regulation that requires adult-oriented establishments to obtain "adult-oriented es-

tablishment licenses" from the village board. Ord. § 12.24(3). The First Amendment standard that applies to a licensing ordinance depends on whether the ordinance targets the content of the licensed speech. *Blue Canary Corp. v. City of Milwaukee*, 251 F.3d 1121, 1123 (7th Cir.2001). Content-based regulations are defined as those that distinguish favored from disfavored speech based on the ideas expressed. *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 643, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). By contrast, content-neutral regulations treat all speech similarly in an effort to advance significant government interests unrelated to content. *Schultz v. City of Cumberland*, 228 F.3d 831, 840 (7th Cir.2000). For example, a general ban on speech in the vicinity of a school is content-neutral, *Grayned v. City of Rockford*, 408 U.S. 104, 119–20, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), whereas an analogous ban on speech with an exemption for speech related to labor disputes is content-based, *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

■ Subject to an exception discussed below, content-based regulations are presumptively invalid under the First Amendment and are subject to strict scrutiny. *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Strict scrutiny applies to regulations of this type because their purpose is typically to suppress free expression, contrary to the First Amendment imperative that the government is not to discriminate against speech based upon its viewpoint or subject matter. *Schultz v. City of Cumberland*, 228 F.3d 831, 840 (7th Cir.2000).

■ Content-neutral regulations, on the other hand, are not subject to strict scruti-

---

1. Defendant does not dispute plaintiff's stand-

ing to litigate the validity of the ordinance.

ny but to a more forgiving, intermediate scrutiny. *Schultz*, 228 F.3d at 845. Under intermediate scrutiny, regulations on speech are constitutional if (1) they further an important or substantial governmental interest; (2) the governmental interest is unrelated to the suppression of free expression; and (3) the incidental restriction on expression is no greater than essential to the governmental interest. *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

■ I thus assess whether the Germantown ordinance is content-based or content-neutral. The ordinance imposes licensing requirements upon "adult entertainment stores," which it defines as establishments whose stock in trade includes materials "which have as their dominant theme or are distinguished or characterized by their emphasis on matters depicting, describing or relating to 'specific sexual activities' or 'specified anatomical areas.'" Ord. § 12:24(2)(b).[2] The ordinance thus on its face targets expression based upon its content. Because it treats erotic expression differently than other expression, it is content-based. *Schultz*, 228 F.3d at 843.

■ Nevertheless, as earlier mentioned, there is an exception to the general rule that strict scrutiny applies to content-based regulations. *Id.; DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 828 (7th Cir.1999). Specifically, content-based regulations are subject only to intermediate scrutiny if they "are *justified* without reference to the content of the regulated speech." *City of Renton v. Playtime The-*

atres, *Inc.*, 475 U.S. 41, 48, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Such a justification is present if the regulation's predominate concern is with the "secondary effects" of the regulated speech, rather than with the content of that speech. *Id.* at 47, 106 S.Ct. 925. Adverse secondary effects sometimes alleged to stem from adult entertainment include increased crime, decreased property values, urban blight, and the spread of sexually transmitted diseases. *Id.* at 48, 106 S.Ct. 925; *Schultz*, 228 F.3d at 847.

■ Content-based regulations can be upheld as if they were content-neutral so long as they (1) are justified without reference to the content of the regulated speech; (2) are narrowly tailored to serve a significant government interest in curbing adverse secondary effects; and (3) still leave open ample alternative channels for communication. *Schultz*, 228 F.3d at 845; *City of Renton*, 475 U.S. at 47, 106 S.Ct. 925. The Supreme Court upheld content-based zoning regulations in *City of Renton* and in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), based upon this test, and in *Schultz* and *DiMa*, the Seventh Circuit upheld limits on the hours of sexually-oriented businesses based on secondary effects justifications.

■ There is no information in the record before me to suggest that the Germantown ordinance's predominant concern is with the secondary effects of the speech that it licenses. To the contrary, the ordinance states that its intent is "primarily to combat the obscenity industry." Ord.

---

**2.** "Specific sexual activities" are defined as "Simulated or actual: 1. Showing of human genitals in a state of sexual stimulation or arousal. 2. Acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sadomasochistic abuse, fellatio, or cunnilingus. 3. Fondling or erotic touching of human genitals, pubic region, buttocks or female

breasts." *Id.* § 12:24(2)(i). "Specified anatomical areas" are defined as "1. Less than completely and opaquely covered human genitals, pubic region, buttocks and female breast below a point immediately above the top of the areola. 2. Human male genitals in a discernible turgid state, even if opaquely covered." *Id.* § 12:24(2)(h).

§ 12.24(1). Moreover, Germantown did not respond to plaintiff's requests for admissions, and thereby conceded that the ordinance "is designed to deter and discourage the dissemination of obscenity in Germantown." (R. 17 Ex. A at 3; Fed. R.Civ.P. 36(a).) Further, Germantown has presented no evidence either that its village board enacted the ordinance because of its concern about secondary effects, or that the ordinance actually combats secondary effects.

■ In response to a First Amendment challenge, a municipality bears the burden of justifying a regulation based on a secondary effects rationale and of presenting evidence supporting the proffered justification. *DiMa Corp.*, 185 F.3d at 829. Germantown asserts that the ordinance's statement of intent should be disregarded because "when read as a whole, the ordinance is cast in terms similar to many others which are intended to regulate adult oriented business in order to combat the secondary effects associated with such businesses." (Def.'s Br. at 6.) Germantown does not explain the similarities that it sees between its ordinance and ordinances that other municipalities enacted to target secondary effects. But even assuming that there are such similarities, it would remain defendant's burden to show that it enacted the ordinance in order to combat the unwanted secondary effects of adult businesses, rather than because it disapproved of such businesses. In the absence of any evidence in the record about what led the Germantown village board to enact the ordinance, I must con-

clude that its rationale is what it says, namely, to combat disfavored speech rather than to combat the secondary effects of such speech.

Because the ordinance is not justified by a secondary effects rationale, it is subject to strict scrutiny. I now apply this standard.

## IV. DISCUSSION

### A. Strict Scrutiny Analysis

■ Under strict scrutiny, laws regulating the content of speech will be upheld only when they are justified by compelling governmental interests, are necessary to serve such interests, and are narrowly tailored. *See, e.g., Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 118, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991); *R.A.V*, 505 U.S. at 377, 112 S.Ct. 2538.[2] Regarding this standard the Supreme Court observed that:

> As a matter of constitutional tradition in the absence of evidence to the contrary, we presume that governmental regulation of the content of speech is more likely to interfere with the free exchange of ideas than to encourage it. The interest in encouraging freedom of expression in a democratic society outweighs any theoretical but unproven benefit of censorship.

*Reno v. Amer., Civil Liberties Union*, 521 U.S. 844, 885, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).

---

**2.** In his concurring opinion in *Simon & Schuster*, Justice Kennedy expressed the view that the strict scrutiny standard found its way into First Amendment jurisprudence accidentally, and that the standard should never have been applied to laws regulating speech based on content. 502 U.S. at 125, 112 S.Ct. 501 (Kennedy, J., concurring). In his view a content-based regulation of protected speech is unconstitutional and cannot be justified by any state interest. *Id.* at 124–25, 112 S.Ct. 501 (Kennedy, J., concurring). Without agreeing with Justice Kennedy, the Court observed that, as a practical matter, it had not yet found a state interest sufficiently compelling to satisfy the strict scrutiny test. *Id.* at 120, 112 S.Ct. 501 (majority opinion).

Thus, the ordinance is presumed to be unconstitutional. No evidence overcoming this presumption has been presented. The ordinance purports to serve a governmental interest in combating obscenity. Combating obscenity is not an activity that a Wisconsin village is entitled to undertake. Wis. Stat. Ann. § 66.0107(3) (West Supp.2000) (forbidding cities, villages and towns from prohibiting the conduct covered by Wis. Stat. § 944.21, the state's anti-obscenity law). And in any case, the substance of the ordinance does not relate to obscenity; it makes no reference to prurient interests, patent offensiveness, or lack of serious literary, artistic, political, educational, or scientific value.

As mentioned above, defendant asserts in its brief that the ordinance serves the governmental interest of combating the secondary effects that stem from adult entertainment. It is undoubtedly a compelling governmental interest to combat such secondary effects when they are present, but, as we have seen, the text of the ordinance belies the claim that it was enacted to serve this interest, and there is no evidence in the record to indicate that it actually does so. Thus, the presumption of unconstitutionality has not been overcome, and the ordinance is unconstitutional.

## B. Overbreadth

Plaintiff argues that even assuming that the ordinance can be justified based on a secondary effects rationale, it is nevertheless unconstitutional because it is overbroad. I now address this argument.

### 1. General Principles

The doctrine that a law can be unconstitutionally overbroad is derived from an important tenet of First Amendment jurisprudence known as the precision principle. This principle means that terms used to identify proscribed speech must be defined with an exactitude beyond that of other routine legislation so that speakers know in advance what speech is and is not permitted, thereby avoiding the self-censorship that may be caused by uncertainty. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *see also* 1 Rodney A. Smolla, *Smolla and Nimmer on Freedom of Speech,* §§ 4:24, 6:1 (3rd. ed.2000).

The precision principle is a component of both the strict and intermediate scrutiny standards. The requirement of precision "is a First Amendment universal." 1 Smolla, *supra,* at § 4.25 (internal quotation marks and footnote omitted). Thus, both content-based and content-neutral ordinances are subject to overbreadth analysis.

The overbreadth doctrine precludes government from using means that sweep unnecessarily broadly to prevent or control activities that are constitutionally subject to regulation and thereby invade protected freedoms. *NAACP v. Alabama ex rel. Flowers,* 377 U.S. 288, 307, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964). The doctrine permits litigants already before the court to challenge a regulation on its face and raise the rights of third parties whose protected expression may be burdened by the regulation. *Schultz,* 228 F.3d at 848. It is also a means to curb the selective enforcement of laws based on the unfettered exercise of official discretion. *See* Kenneth L. Karst, *Equality as a Central Principle in the First Amendment,* 43 U. Chi. L.Rev. 20, 38 (1975).

However, before facial invalidation of a law is appropriate, the overbreadth must be substantial, and the law must not cover an easily identifiable range of constitutionally proscribable conduct. *Broadrick,* 413 U.S. at 613, 615, 93 S.Ct. 2908. Further, there must be no readily available limiting or narrowing construction ca-

pable of trimming the unconstitutional applications of the statute. *Schultz*, 228 F.3d at 848.

## 2. Overbreadth as it Relates to Regulation of Sexually Explicit Expression

As previously discussed, the government may regulate sexually explicit expression through laws aimed not at the content of the expression but at its secondary effects. Such ordinances must be "narrowly tailored so as to affect only that category of [businesses] shown to produce the unwanted secondary effects." *City of Renton*, 475 U.S. at 52, 106 S.Ct. 925 (internal quotation marks omitted). The requirement that the law be narrowly tailored guards against governmental regulation of sexually explicit expression unconnected to secondary effects. *Schultz*, 228 F.3d at 849. Thus, an enactment that purports to be aimed at secondary effects but which also covers a substantial amount of expressive activity that cannot plausibly be believed to cause such effects will be invalidated for overbreadth. *Id.*

In *Schultz* the Seventh Circuit considered the constitutionality of a law banning all nude (and semi-nude) performances. The plaintiff argued that the law was overbroad because, although such performances might plausibly cause secondary effects in the adult entertainment context, there was no evidence that they had such effects in the context of a serious artistic or theatrical performance. The court agreed that the law proscribed nude performances in both situations, and that secondary effects were not associated with nudity in the latter context. The court concluded that the ordinance was written too broadly and that it was able to escape invalidation for overbreadth only because a narrowing construction was possible to prevent it from being applied to serious artistic and theatrical performances. *Id.*

Evidence that secondary effects may arise from sexually explicit expression in some contexts, such as adult movie theaters, is constitutionally inadequate to justify regulating such expression in other contexts, such as businesses that primarily distribute mainstream videos to general audiences but also distribute some adult material. *See, e.g., World Wide Video, Inc. v. City of Tukwila*, 117 Wash.2d 382, 816 P.2d 18, 21 (1991); *Wolff v. City of Monticello*, 803 F.Supp. 1568, 1573 (D.Minn.1992). Ordinances that are written so broadly as to sweep within their scope businesses that do not cause secondary effects will be invalidated. *World Wide Video*, 816 P.2d at 21; *Wolff*, 803 F.Supp. at 1573.

In *World Wide Video*, the Washington Supreme Court struck down as overbroad an ordinance defining an adult store as one in which ten percent or more of the store's inventory consisted of adult videos. 816 P.2d at 21. The court based its decision on the absence of any evidence in the record that a business whose stock in trade was limited to ten and a half percent sexually explicit material could cause secondary effects of the sort that were the asserted rationale for the challenged ordinance. *Id.See also Z.J. Gifts D–2, L.L.C. v. City of Aurora*, 136 F.3d 683, 690 (10th Cir.1998) (holding that ordinances justified by secondary effects rationales cannot survive overbreadth scrutiny if they regulate businesses with minimal connections to sexually oriented entertainment, and citing *World Wide Video* as an example).

In *Wolff* the court reached a similar conclusion. 803 F.Supp. at 1573. The ordinance there under review divided adult businesses into two categories, "adult use/principal" and "adult use/accessory," but justified its regulation solely upon studies finding that businesses in the first category produced unwanted secondary ef-

fects. The plaintiffs ran video rental stores that rented both general release and adult-only videos; the adult-only section of each store comprised less than ten percent of its total floor space. The court found that there was no evidence that all businesses dealing in sexually explicit material, regardless of degree, created adverse effects such as crime and urban blight. *Id.* To the contrary, the court said that the only evidence in the record indicated that businesses like the plaintiffs' did not cause the same secondary effects as businesses that dealt in sexually explicit materials on a large scale. *Id.See also Faraone v. City of E. Providence,* 935 F.Supp. 82, 88–89 (D.R.I.1996) (ordinance prohibited renting adult videotapes on holidays and Sundays; court found it unlikely that plaintiff, a video store whose stock in trade was about ten percent "adult-oriented," would cause such secondary effects as traffic congestion, parking problems, the performance of sexual acts in public, or the littering of sexually explicit materials near residential communities).

Because of the problem of demonstrating secondary effects from establishments that do a relatively small amount of business in sexually explicit material, ordinances that regulate adult establishments typically limit their scope in some fashion. Some enactments specify a percentage of floor space, inventory, income, or a combination that must be present before an establishment is deemed adult and subject to regulation. *See, e.g., City of New York v. Les Hommes,* 94 N.Y.2d 267, 271, 702 N.Y.S.2d 576, 724 N.E.2d 368 (N.Y.1999) (under New York City ordinance a business qualifies as an adult establishment if sexually explicit materials are a "substantial portion" of its stock; administrative guidelines provide that "substantial portion" requires forty percent of the floor area and cellar space, or 10,000 square feet, to be devoted to adult material); *Artistic Entm't, Inc. v. City of Warner Rob-*

*ins,* 223 F.3d 1306, 1309–10 (11th Cir.2000) (per curiam) (ordinance defined "adult entertainment business" to exclude establishments that "regularly feature" non-adult material; "regularly feature" defined as 80% of total activity); Palm Beach County, Fla., Ord. 88–31 § I(G)(2) (Nov. 15, 1988) (defining "adult bookstore/video store" as one with more than forty percent of its gross income from adult material and with such material constituting more than ten percent of its stock in trade), *reprinted inMovie & Video World, Inc. v. Bd. of County Comm'rs,* 723 F.Supp. 695 app. at 709–10 (S.D.Fla.1989); West Allis, Wis., Rev. Mun.Code §§ 9.28(1)(b), (1)(s) (2000), http://www.generalcode.com/webcode2.html (ordinance defines "adult bookstore" as facility offering adult material as part of its "regular and substantial course of conduct"; "substantial" defined as "fifty percent (50%) or more of a business' stock in trade, display space, floor space or retail sales in any one month during the license year").

Other ordinances regulating adult establishments use more general language to define their scope. *See, e.g.,* Rochester, Minn., Code of Ordinances § 60.4012 (defining "adult bookstore" as one where a "substantial or significant portion" of items sold are sexually explicit), *quoted in ILQ Invs., Inc. v. City of Rochester,* 25 F.3d 1413, 1415 n. 2 (8th Cir.1994); *SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1278 n. 36 (5th Cir.1988) (adult enterprises defined as establishments whose "major business" is offering a product or service intended to provide sexual stimulation or gratification); Peoria, Ill., Ord. No. 10318 § 4–43A (adopted Mar. 22, 1978, amended Jan. 16, 1979) (adult book store defined as one where "substantial portion" of stock in trade was in sexually explicit material), *quoted in Genusa v. City of Peoria,* 619 F.2d 1203, 1209 n. 7 (7th Cir.1980).

■ But for present purposes it is irrelevant whether an adult establishment ordinance uses specific or general terms to define the establishments that it regulates. The critical point is that if a secondary effects rationale is asserted to justify the ordinance, there must be evidence linking the regulated establishments to the targeted secondary effects. *City of Renton*, 475 U.S. at 51–52, 106 S.Ct. 925.

### 3. Overbreadth and the Germantown Ordinance

■ The Germantown ordinance defines an "adult entertainment store" as:

an establishment including in its stock in trade for sale, rent, lease, inspection or viewing books, films video cassettes, novelties, magazines or other periodicals which have as their dominant theme or are distinguished or characterized by their emphasis on matter depicting, describing or relating to 'specified sexual activities' or 'specified anatomical areas.'

Ord. § 12:24(2)(b). The ordinance on its face thus covers all businesses that deal in any sexually explicit material regardless of how small a percentage of their inventory, floor space, or income is connected to such material. Defendant acknowledges that the ordinance's definition encompasses materials sold by mainstream video outlets.

Owing to the fact that any number of R-rated movies in general circulation which could be classified as 'adult-oriented,' i.e., showing the female breast below a point immediately above the top of the areola and having sexuality as a dominant theme (Ordinance 12.24(2)(h)(*l* )), it defies credulity to believe that there is no such movie on the shelves of Hollywood Video, Blockbuster or any other Germantown video store besides Plaintiff.

(Def.'s Br. at 4–5.)

Additionally, defendant concedes that it is unaware of any studies or other evidence finding secondary effects from establishments whose primary business is renting or selling mainstream videos to general audiences but which also carry in stock a small percentage of adult material. (R. 17 Ex. A at 4.) Further, the record contains no such evidence. Thus, the ordinance sweeps within its ambit sexually explicit expression unconnected to secondary effects and is overbroad. *Schultz*, 228 F.3d at 849.

■ In addition, the ordinance is substantially overbroad because it does not lend itself to the easy identification of a range of constitutionally proscribable conduct. *Broadrick*, 413 U.S. at 615, 93 S.Ct. 2908. Further, it is not susceptible to a narrowing construction. In *Schultz* the court saved an ordinance that otherwise would have been invalidated for overbreadth, by construing the word "regularly" to mean "always." *Schultz*, 228 F.3d at 850. This narrowing construction limited the reach of the regulation to nude performances in the context of adult entertainment, and eliminated from coverage nude performances in the context of serious or artistic theater. The Germantown ordinance contains no language by which its scope could be comparably narrowed.

■ Defendant argues that the ordinance can be narrowed based on past practice; for example, the fact that it has not to date sought to enforce the ordinance against Blockbuster and other video stores that lack separate adult sections, it contends, demonstrates that in practice the ordinance applies only to video stores that voluntarily create segregated adult sections. In *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 770 n. 11, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), the Supreme Court stated that in some situations "a well-understood and uniformly applied practice" may have the same effect on an overbroad enactment as a narrowing

judicial construction. However, the record discloses that between 1992, when the ordinance was enacted, and 2001 when it was enforced against plaintiff, defendant's only practice was non-enforcement. A practice of non-enforcement does not lend itself to a narrowing construction. Municipalities generally must demonstrate a pattern of behavior from which a plausible interpretation of a law may reasonably be inferred. *See, e.g., Ward v. Rock Against Racism,* 491 U.S. 781, 794, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (municipality had extensive history of conferring with concert sponsors about sound quality), *Stokes v. City of Madison,* 930 F.2d 1163, 1169–70 (7th Cir.1991) (city granted twenty-five applications for permits to speak on mall in previous five years). No reasonable construction of an ordinance's scope can be gleaned from a municipality's failure to enforce it.

Additionally, if Germantown had in mind an enforcement practice other than non-enforcement, there is no evidence in the record either as to what practice it contemplated or that any businesses subject to the ordinance understood what the enforcement practice would be. Defendant states in its brief that "the Village, in effect, has relied upon the video store operators themselves" to determine whether their stock was covered by the ordinance. (Def.'s Br. at 5.) When shown Germantown's adult-oriented establishment ordinance, plaintiff's president initially believed that it did not apply to his video store. (R. 5 ¶ 10.) Thus, there was no uniformly applied or well-understood practice that could serve the function of a narrowing judicial construction.

Therefore, the ordinance is unconstitutionally overbroad.

## C. Prior Restraint

■ Certain kinds of First Amendment issues are analyzed under tests equivalent to strict scrutiny but tailored to the specific circumstances of the case. These tests are sometimes characterized as involving heightened scrutiny and, like the strict scrutiny test, are strongly speech protective. 1 Smolla, *supra,* § 4.3. One such test, applicable in cases of licensing regulations, is that of prior restraint.

■ A prior restraint is a rule that restricts expression before it takes place rather than imposing penalties on the expression after it occurs. *Alexander v. United States,* 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993). At its core, the prior restraint doctrine is linked to the First Amendment's aversion to governmental censorship. *S.E. Promotions, Ltd. v. Conrad,* 420 U.S. 546, 559, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). The Germantown ordinance imposes a licensing requirement on sexually explicit expression. Because the ordinance is not justified by a secondary effects rationale, its licensing requirement is properly characterized as censorship and properly analyzed as a prior restraint. *Blue Canary Corp.,* 251 F.3d at 1123.

■ Prior restraints are subject to a heavy presumption against their constitutional validity. Supreme Court cases have identified two particular situations that render zoning or licensing schemes unconstitutional under prior restraint analysis: (1) the scheme places "unbridled discretion in the hands of a government official or agency," or (2) the scheme does not limit the time within which the decisionmaker must issue a license or permit. *Special Souvenirs, Inc. v. Town of Wayne,* 56 F.Supp.2d 1062, 1085 (E.D.Wis.1999) (quoting *City of Lakewood,* 486 U.S. at 757, 108 S.Ct. 2138).

The prohibition on delegating broad discretion to government officials in implementing speech regulations, like the overbreadth doctrine, derives from the

precision principle of First Amendment jurisprudence discussed earlier. The underlying concern about delegating too much discretion to government censors is that it is often difficult to know in advance whether the censor will find certain expression to be legitimate or illegitimate, and regulating speech in advance creates a danger of throttling legitimate expression. *S.E. Promotions, Ltd.,* 420 U.S. at 559, 95 S.Ct. 1239.

The Germantown ordinance requires the village board to grant an adult entertainment license to an applicant if certain objective conditions are met.[3] However, the ordinance also authorizes the board to impose additional "conditions" on any license. Ord. § 12:24(4)(f). The board imposed two conditions on plaintiff's license, one requiring a separate adult section and the other prohibiting the advertising of adult material on the building's exterior.

Plaintiff argues that the board's authority to impose conditions is so broad as to constitute unbridled discretion. Unlimited power to set conditions can easily mask censorship in the guise of conditions. *City of Lakewood,* 486 U.S. at 769, 108 S.Ct. 2138; *see also Special Souvenirs, Inc.,* 56 F.Supp.2d at 1088 (holding that a provision allowing a zoning board to attach any conditions "necessary to fulfill the purpose and intent" of the ordinance was unconstitutional because it failed to limit the discretion of decisionmaking officials). *See also TJ's South, Inc. v. Town of Lowell,* 895 F.Supp. 1124 (N.D.Ind.1995), where the court stated:

> The ordinance also allows officials to give with one hand while taking away

with the other. A [permit] may be granted subject to 'conditions and safeguards.' ... [T]he record gives no clue as to what conditions and safeguards defendants have the authority to require. Under this broad latitude, an official might place conditions on a [permit] that are so burdensome that the applicant can derive no real benefit from using it.

*Id.* at 1131–32; *see also N.J. Freedom Org. v. City of New Brunswick,* 7 F.Supp.2d 499, 513 (D.N.J.1997) (the ability to impose special conditions on permit applicants renders unclear the limits actually placed upon government authority).

Under the Germantown ordinance the village board's authority to impose conditions is unlimited. The ordinance contains no limitations on the conditions that the board may impose. Defendant argues that the conditions actually imposed on plaintiff were reasonable. However, plaintiff challenges the ordinance on its face and thus may raise the rights of third parties who may be burdened by conditions not imposed on it. A narrowing judicial construction or local practice may sometimes save an offending ordinance but neither is present here. In the absence of explicit language or well-established practice limiting the censor's discretion, I cannot presume that village officials will always act in good faith. *Special Souvenirs, Inc.,* 56 F.Supp.2d at 1088. Accordingly, the licensing ordinance fails to limit official discretion and is thus an unconstitutional prior restraint.

---

**3.** One of these objective conditions forbids granting a license if any applicant or co-owner has been convicted within the previous five years of various specified criminal offenses, including dishonesty, fraud, deceit, robbery, or sexual immorality. Ord. § 12.24(5)(h). Although not discussed by the

parties, this condition totally prohibits certain classes of persons from selling or renting materials protected by the First Amendment, *Genusa,* 619 F.2d at 1218, in the absence of any showing that such discrimination furthers any legitimate state interest, *Chulchian v. Indianapolis,* 633 F.2d 27, 32 (7th Cir.1980).

## V. CONCLUSION

For the foregoing reasons, I find that the ordinance does not survive strict scrutiny, is unconstitutionally overbroad, and is an unconstitutional prior restraint. I therefore find it unnecessary to address plaintiff's remaining arguments concerning whether the ordinance sufficiently limits the time in which a license must be issued and whether the ordinance is preempted by state law.

**THEREFORE, IT IS HEREBY ORDERED** that plaintiff's request for a preliminary injunction is **GRANTED.**